Marilyn BARRY, Plaintiff

v.

WING MEMORIAL HOSPITAL
Defendant

No. CIV.A. 00–30045–MAP.

United States District Court,
D. Massachusetts.

May 14, 2001.

Terrence A. Low, Rosen, Greenhut, Catugno & Low, Springfield, MA, for Marilyn Barry, Plaintiff.

Jay M. Presser, Susan G. Fentin, Skoler, Abbott & Presser, Springfield, MA, for Wing Memorial Hospital, Defendant.

## MEMORANDUM REGARDING PARTY'S CROSS MOTIONS FOR SUMMARY JUDGMENT AND PLAINTIFF'S MOTION TO AMEND COMPLAINT

(Docket Nos. 20, 23 and 26)

PONSOR, District Judge.

### I. INTRODUCTION

Plaintiff Marilyn Barry ("Barry") has sued Wing Memorial Hospital ("Hospital") for violation of the Family and Medical Leave Act, 29 U.S.C. § 2614 ("FMLA"), and the Massachusetts Anti-discrimination Statute, Mass. Gen. Laws ch. 151B § 4(16) ("chapter 151B"). Before this court are the parties' cross motions for summary judgment and Barry's motion to amend her complaint. The Hospital's motion for summary judgment will be allowed in full. Barry's motions for summary judgment and to amend her complaint will be denied.

### II. STANDARD OF REVIEW

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). A "genuine" issue is one that reasonably could be resolved in favor of either party, and a "material" fact is one that affects the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In reviewing the motion, the court views all the evidence in the light most favorable to the

nonmoving party, "drawing all reasonable inferences in that party's favor." *Thomas v. Eastman Kodak Co.*, 183 F.3d 38, 42 (1st Cir.1999), *cert. denied,* 528 U.S. 1161, 120 S.Ct. 1174, 145 L.Ed.2d 1082 (2000).[1]

## III. *BACKGROUND*

Marilyn Barry began working at Wing Memorial Hospital as a medical librarian in 1975. In 1984, she became Director of Public Relations, Marketing and Development for the Hospital. She reported directly to the Hospital's President and Chief Executive Officer, Richard Scheffer ("Scheffer").

In the fall of 1995, Barry began to experience mental and emotional difficulties. Her marriage was failing and she suffered from family and work related stress. As part of an effort to address these difficulties, Barry was placed on antidepressants in March 1996. She was referred to Susan James, a licensed clinical social worker, and began counseling that May.

Unfortunately, Barry's condition thereafter worsened. During the spring and summer of 1996 she began exhibiting symptoms of serious depression; she lost her ability to concentrate, felt helpless and despondent, and had moments of suicidal ideation. In addition, she began to have difficulties at work. She felt that Scheffer had been unjustly critical of her and that their working relationship was deteriorating. By September 30, 1996, she was hospitalized and began medical leave for what was later diagnosed as major depression.

The Hospital determined that Barry was entitled to a leave of absence under the FMLA and sent her an FMLA certification form. On October 10, 1996, Barry's Psychiatrist, Dr. Edward Ballis, returned the form, stating that since the September 30, 1996 hospitalization, Barry had been unable to perform work of any kind.

On October 10, 1996, Barry was released from the hospital, but was not cleared to return to work until later that month. On October 23, however, Dr. Ballis informed the Hospital that Barry's return date had been postponed; she would not be able to go back to work until sometime in November.

During Barry's leave, Scheffer decided that Barry's position at the Hospital needed restructuring. In a letter dated October 28, 1996 ("the letter"), Scheffer informed Barry that, in an effort to "consolidate roles and responsibilities and save money wherever possible," the hospital would be eliminating her position of Public Relations Director. Pl.'s Mot. for

1. In addition to its motion on the merits, the Hospital moved to dismiss because Barry did not file a statement of undisputed facts pursuant to D.Mass.R. 56.1. This motion has some merit. As a matter of necessity, district courts require the parties' assistance in sorting through the factual issues at play in a summary judgment motion. *See Stepanischen v. Merchants Despatch Transp. Corp.*, 722 F.2d 922, 927 (1st Cir.1983). In the District of Massachusetts this requirement has been codified in the local rules. *See* D.Mass.R. 56.1. A party must provide a roadmap for the court by including a "concise statement of material facts as to which the party contends there is no genuine issue to be tried, with page references to affidavits, depositions and other documentation" with its motion papers. *Id.* A failure to include such a statement constitutes grounds for denial of the motion. *Id.* In addition, if a party fails to controvert the facts asserted in the opponent's statement, those facts "will be deemed for purposes of the motion to be admitted." *Id.* This Local Rule has teeth, and can be dispositive; parties ignore such rules "at their own peril." *Morales v. A.C. Orssleff's EFTF*, 246 F.3d 32, 2001 WL 339187 (1st Cir. April 11, 2001); *citing, Ruiz Rivera v. Riley*, 209 F.3d 24, 28 (1st Cir.2000).

Given the court's ruling on the merits, it is unnecessary to address this issue. Counsel should, however, note the importance of scrupulous compliance with D.Mass.R. 56.1.

Summ. J., Dkt. No. 26, Ex. 11. Scheffer created the position of "Marketing Coordinator" as a replacement and offered that position to Barry. The letter stated that "although some of the functions may be similar to what you were doing prior to your leave, there will no longer be any managerial functions or ultimate responsibility." *Id.* In addition, the Marketing Coordinator position would require fewer hours. Finally, the letter stated that Barry need not notify Scheffer whether she would accept the position at that time since the final job description and salary needed to be discussed.

Following receipt of the letter, Barry's psychiatric condition deteriorated and she was re-hospitalized from November 11 through November 27. Dr. Ballis and Susan James opined that Barry's second hospitalization was a direct result of the letter from Scheffer.

Since her initial leave in September 1996 to the present time, Barry has not returned to work. She has never requested any accommodation and concedes that she has been incapable of working since her September 1996 medical leave. By September 2000, Barry's doctor still had not cleared her for work for any employer in any capacity. *See* Index of Docs. in Supp. of Def.'s Stmt. of Undisputed Facts ("Barry Dep.") at 59–60.

After her hospitalization, Barry began applying for and receiving various disability benefits, including long term disability from the Hospital's insurance carrier, Social Security disability and worker's compensation from the Department of Industrial Accidents. On each of these applications, Barry indicated that she was permanently disabled and

that her disability began in late September 1996.

This lawsuit originated as a Massachusetts Commission Against Discrimination ("MCAD") complaint filed on April 30, 1997, in which Barry alleged violations of Mass. Gen. Laws ch. 151B. The complaint was dismissed on April 15, 1998. On October 27, 1999, plaintiff filed a complaint in Massachusetts Superior Court alleging the chapter 151B violation and several common law claims. Barry moved to amend her complaint by eliminating the common law claims and adding a claim under the FMLA. The motion was granted on March 14, 2000. The Hospital's petition to remove the complaint, alleging violations of chapter 151B and the FMLA, to this court was filed on March 20, 2000.

## IV. *DISCUSSION*

### A. *Violation of the Family and Medical Leave Act*

Barry asserts that under the FMLA she had a right to be restored to either her prior position or a substantially equivalent position. According to Barry, the Hospital violated that right when it sent her the letter informing her that her job had been eliminated and the Marketing Coordinator position established. The Hospital contends that the right to be restored to the same or equivalent position is not triggered until a worker returns from leave. Since Barry never returned from her leave, she never had a right to be restored to the same or equivalent position.[2] The Hospital has the better argument. Because Barry never returned from her FMLA leave, she cannot claim that the Hospital violated her right to reinstatement.

---

**2.** The Hospital also asserts a statute of limitations defense. Because this court finds that Barry's FMLA claim fails as a matter of law, the statute of limitations arguments will not be addressed.

The FMLA entitles an employee up to twelve weeks of leave during a twelve month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(1)(D). Any employee who takes FMLA leave "shall be entitled, on return from such leave—(A) to be restored by the employer to the [previous] position . . . or (B) to be restored to an equivalent position with equivalent employment benefits, pay, and other terms and conditions of employment." 29 U.S.C. § 2614(a)(1)(A), (B); *Watkins v. J & S Oil Co., Inc.*, 164 F.3d 55, 59 (1st Cir.1998).

The First Circuit has described the FMLA as containing two distinct types of rights. *See, Hodgens v. Gen. Dynamics Corp.*, 144 F.3d 151 (1st Cir.1998). The FMLA first creates certain substantive entitlements that the First Circuit described as "prescriptive" rights. *Id.* at 159. The FMLA also provides certain protections from discrimination known as "proscriptive" rights. *Id.* at 159–60. When prescriptive rights are in controversy, "[t]he issue is simply whether the employer provided its employee the entitlements set forth in the FMLA—for example, a twelve-week leave or reinstatement after taking a medical leave." *Id.* at 159. "Because the issue is the right to an entitlement, the employee is due the benefit if the statutory requirements are satisfied, regardless of the intent of the employer." *Id.* With proscriptive rights, however, an employer's motive is relevant "and the issue is whether the employer took the adverse action because of a prohibited reason or for a legitimate nondiscriminatory reason." *Id.* at 60.

Barry complains of a violation of her prescriptive rights under the FMLA. She claims that she was entitled to return to the same or equivalent position and that the Hospital failed to provide her with that entitlement. *See Hodgens*, 144 F.3d at 159 (citing entitlement to return to same or equivalent position as a prescriptive right created by the FMLA). Thus, the question here is whether Barry has satisfied the statutory requirements to assert her right to reinstatement under the FMLA. *See id.* at 159.

■ The FMLA requires that an employee who has taken leave under the act be restored to the same or equivalent position "on return from such leave." 29 U.S.C. § 2614(1). Although an employee need not "show up on the employer's doorstep" in order to have qualified as returning from FMLA leave, *Watkins*, 164 F.3d at 59, the employee must be able to return to her prior position before she has a right to reinstatement. *See id.* at 60 (whether plaintiff "had 'returned from leave' . . . and was therefore eligible for reinstatement" was disputed issue of fact left to the jury); *cf.* 29 C.F.R. § 825.214(b) ("[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition . . . the employee has no right to restoration to another position under the FMLA"). In addition, courts have held that an employee has no right to reinstatement if she has not returned to work after her twelve weeks of FMLA leave have ended. *See, Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784–785 (6th Cir.1998) (termination of employee did not violate FMLA where employee was unable to return to work after the twelve week leave period).

■ Here, Barry has not met the statutory requirement. It is undisputed that Barry is currently unable to work and has not been able to work since she began her FMLA leave. Her psychiatrist, Dr. Ballis, has indicated that Barry is totally disabled and unable to work in either her former

position or any other position. Barry herself has applied for Social Security benefits and worker's compensation and, on those applications, stated that she is totally disabled. Since the undisputed evidence indicates that Barry is completely disabled and cannot return to work, she does not have a statutory right to reinstatement under the FMLA.

Barry's arguments in support of an FMLA violation under these circumstances are unavailing. Barry first argues that regardless of whether she returned to work, the Marketing Coordinator position described in the letter was not substantially equivalent to her prior position and that, by sending the letter, the Hospital violated the FMLA. This argument, however, ignores the fact that Barry's FMLA right to reinstatement would not have been triggered *until* she returned to work. It is perhaps possible that the Marketing Coordinator position would not have met the criteria for a substantially equivalent position. Yet, because Barry never returned to work, she cannot invoke the FMLA to challenge the substance of the position change.

Similarly, Barry argues that the letter amounted to a constructive discharge and precluded her from being able to return to work. Constructive discharge, however, "usually describes harassment so severe and oppressive that staying on the job while seeking redress is intolerable." *Keeler v. Putnam Fiduciary Trust Co.*, 238 F.3d 5, 10 (1st Cir.2001). The letter may have been insensitive given Barry's struggles, but it was not so insensitive that it prevented Barry from working while seeking her FMLA remedies.

*See id.* (loss of responsibilities and staff, lower evaluations and elimination of bonuses do not amount to constructive discharge.)

Finally, Barry argues that receipt of the letter was such an emotional blow that it caused her relapse and is the primary reason she was not able to return to work. The thrust of this argument is that but for the Hospital's decision to eliminate Barry's former position, she would have been able to recover. As evidence, Barry states that she had been released from the hospital and was scheduled to return to work in November but, after receiving the letter, had to be re-hospitalized.

Assuming for the purposes of summary judgment that this assertion is true, Barry still does not raise a claim cognizable under the FMLA. The essence of her argument is that by sending the letter the Hospital either caused or contributed to her injury. Barry may be able to pursue this theory in a claim under worker's compensation statutes or for negligence under some theory perhaps of intentional infliction of emotional distress.[3] The FMLA, however, does not address the cause of an employee's injury. Instead, the FMLA entitles an employee to take a medical leave of absence and addresses an employee's rights upon return from leave. As a result, the fact that the letter may have caused plaintiff's relapse, if accepted as true, does not help her FMLA claim.

### B. *Violation of Mass. Gen. Laws ch. 151B*

Barry claims that her right to return to work under the FMLA is a reasonable

---

**3.** In fact, the first complaint Barry filed in Massachusetts Superior Court did include a common law claim of intentional infliction of emotional distress based on Scheffer's decision to restructure Barry's position. *See,* Petition for Removal, Dkt. No. 1, Ex. A. That claim was dismissed on January 28, 2000. *See,* Pl.'s Opp'n to Def.'s Mot. for Summ. J., Dkt. No. 28, Ex. 1.

accommodation she must be afforded under Mass. Gen. Laws ch. 151B. The Hospital, she argues, denied her this reasonable accommodation by eliminating her position as Director of Public Relations and offering her the new position of Marketing Coordinator.

■ Barry's chapter 151B claim fails for the same reason as her FMLA claim; she has not met the statute's necessary requirements. Barry has never sought a reasonable accommodation and has effectually conceded that there is no accommodation that would allow her to return to work. As a result, she does not fit the criteria of a qualified handicapped person protected under Mass. Gen. Laws ch. 151B.[4]

Chapter 151B prohibits an employer from discriminating against "any person alleging to be a qualified handicapped person" because of her handicap. Mass. Gen. Laws ch. 151B § 4(16). Chapter 151B defines the term "qualified handicapped person" as "a handicapped person who is capable of performing the essential functions of a particular job, or who would be capable of performing the essential functions of a particular job with reasonable accommodation to his handicap." Mass. Gen. Laws ch. 151B, § 1(16); *see also*

*August v. Offices Unlimited, Inc.*, 981 F.2d 576, 580 (1st Cir.1992).

In the analogous context of the Americans with Disabilities Act,[5] the First Circuit has articulated a two part test for determining if an employee is a qualified handicapped person: (1) whether the employee could perform the essential functions of the job; (2) if not, whether any reasonable accommodation by the employer would enable him to perform those functions. *Ward v. Massachusetts Health Research Institute, Inc.*, 209 F.3d 29, 33–34 (1st Cir.2000)

The record indicates that Barry does not satisfy either part of the test. She cannot perform the essential functions of the job and no reasonable accommodation would enable her to do so. A colloquy from her deposition squarely settles the issue.

Q: And in terms of giving a prognosis of when you might be able to return to work, even as of March '98 the doctor was indicating that was unknown?

Barry: That's right.

Q: Has that changed at any point? Have you been told you are able to return to work?

A: No.

4. In addition to arguing that Barry does not meet the criteria of a qualified handicapped person, the Hospital also argues that her chapter 151B claim is narrowed by the applicable statute of limitations. The Hospital is correct. The statute of limitations for chapter 151B limits Barry to claiming those incidents occurring on or after October 30, 1997—six months prior to the filing of her complaint with the MCAD—as evidence of employment discrimination. *See* Mass. Gen. Laws ch. 151B § 5. There is no evidence of a serial violation that would permit "reaching back" beyond the established limitations period. *See, Provencher v. CVS Pharmacy, Div. of Melville Corp.*, 145 F.3d 5, 14 (1st Cir.1998) (serial violation requires a chain of similar dis-

criminatory acts emanating from the same discriminatory animus). Since the Hospital does not argue otherwise, this court assumes that the letter sent by Scheffer on October 28, 1996 was not received by Barry until on or after October 30, 1996 and, therefore, falls within the proper limitations period.

5. The Supreme Judicial Court of Massachusetts has indicated that federal case law construing the ADA should be followed in interpreting the Massachusetts disability law. *See Labonte v. Hutchins & Wheeler*, 424 Mass. 813, 678 N.E.2d 853, 856 n. 5 (1997); *Wheatley v. American Tel. & Tel. Co.*, 418 Mass. 394, 636 N.E.2d 265, 268 (1994).

Q: So your medical treatment still has not cleared you to return to work for any employer in any capacity with or without accommodations?

A: That's right.

Barry Dep., Dkt. No. 27, Ex. A., at 59–60. A similar colloquy places her disability in even starker terms.

Q: And you contend there is no job, there is no gainful employment for any employer you can perform with your limitations with or without reasonable accommodations?

Barry: I have trouble making change at the supermarket.

*Id.* at 76.

As noted, Barry all but concedes that she does not currently meet the criteria for a qualified handicapped person. She does argue, however, that after her initial discharge from the hospital on October 10, 1996, she had exhibited signs of improvement and met the criteria for a qualified handicapped person at that time. The objective record, however, belies this argument.

Most notably, Barry has filled out several disability benefits forms in which she has stated that she has been "totally disabled and prevented from doing any task pertaining to [her] occupation" since late September 1996—a month before she received the letter. Barry Dep., Dkt. No. 27, Ex. 18; *accord,* Exs. 15 and 20. The Supreme Court has recently held that a plaintiff who has stated that she is totally disabled on benefits forms does not meet the ADA's criteria of a "qualified handicapped person" unless she explains her contradictory statements sufficiently to allow a reasonable juror to conclude that she could perform the essential functions of her job, with or without accommodation. *See, Cleveland v. Policy Management Sys-*

*tems, Corp.,* 526 U.S. 795 807, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999).

Here, Barry cannot sufficiently explain the contradiction. The record repeatedly indicates that Barry has been disabled, without interruption, since her initial hospitalization in late September. As Susan James indicated, Barry received the letter from Scheffer "before she had sufficiently recovered to return to work." Barry Dep., Ex. 19. Dr. Ballis' assessment confirms that Barry was not able to return to work by late October. *See,* Barry Dep. Ex. 8; Ex. 10. Although it seems that the letter did not help her recovery—and may, in fact, have hurt it—Barry's illness never sufficiently subsided to allow her to return to work. As a result, she does not meet the criteria of a qualified handicapped person protected under chapter 151B.

C. *Plaintiff's Motion For Leave to Amend the Complaint*

■ Barry has also requested leave to amend her complaint. The amended complaint would not assert any new claims or legal theories on which recovery could be granted. Instead, it would "amplif[y] those alleged facts which form the basis" of Barry's pre-existing claims. Pl.'s Mot. for Leave to Am. Compl., Dkt. No. 20 at 1. These facts have been thoroughly amplified through discovery and the summary judgment motions; amending the claims to include those amplifications would not stave off summary judgment. As a result, the Motion for Leave to Amend the Complaint will be denied.

V. *CONCLUSION*

No one can deny the terrible ordeal of clinical depression, or the extraordinary courage needed to face it. Plaintiff's determination to pursue these claims despite the burden of her disability is truly impressive.

It would be false generosity, however, to mislead the plaintiff by permitting claims to go forward that lack adequate support as a matter of law. Since the facts of record and all reasonable inferences that might be drawn from them are insufficient, legally, to justify any jury verdict in favor of plaintiff, the defendant's motion for summary judgment must be ALLOWED and the plaintiff's motions for summary judgment and to amend the complaint must be DENIED.

A separate order will issue.