Kathy R. ROBERSON

v.

CENDANT TRAVEL SERVICES, INC.

No. 3:01–1284.

United States District Court,
M.D. Tennessee,
Nashville Division.

Sept. 6, 2002.

David A. Gold, Fred Ingram, Arkovitz & Gold, Nashville, TN, for Kathy R. Roberson, pltf.

Lawrence Slade Eastwood, Jr., Lea C. Owen, Cynthia J. Cutler, Baker, Donelson, Bearman & Caldwell, Nashville, TN, for Cendant Travel Services, Inc., deft.

## MEMORANDUM

WISEMAN, Senior District Judge.

### I. FACTS

Plaintiff was employed by Defendant from October 6, 1986, through March 14, 2001. She was diagnosed with epilepsy in 1992, treated by Dr. Cynthia Susskind, and continued to work. In November 2000, Plaintiff suffered from dizziness and missed four and a half hours of work for a doctor's appointment. On December 19, 2000, Plaintiff started her regular company vacation, to last until January 3, 2001. However, on January 1, 2001, Plaintiff was found unconscious in her bedroom and taken to the emergency room. After a series of tests from Dr. Susskind, it was determined that Plaintiff had narcolepsy, and she began treatment. On March 14, 2001, Plaintiff was dismissed from employment with Defendant for excessive absences. In the letter informing Plaintiff of her termination, Defendant stated that her Family Medical Leave Act (hereinafter, "FMLA") leave was exhausted on February 28, 2001.

Plaintiff filed a complaint in Davidson County Circuit Court, but the case was removed to federal court upon motion by Defendant. Plaintiff claims that her FMLA leave should have started when she notified Defendant of her condition on January 2, 2001, but that Defendant erroneously started the leave on December 6, 2000. Plaintiff asserts that, if the proper date had been used for the beginning of her FMLA leave, the leave would not have ended until March 27, 2001. Plaintiff sued for violations of the FMLA, the Americans with Disabilities Act ("ADA"), and the Tennessee Handicap Act ("THA"), as well as for intentional and negligent infliction of emotional distress. Plaintiff seeks $250,000 in compensatory damages and $150,000 in punitive damages. Defendant asserts that Plaintiff's leave began on De-

cember 20, 2000, and that she never returned from this leave.

On January 25, 2002, Plaintiff filed a Motion for Summary Judgment, arguing that the only dispute appeared to be over when the FMLA leave period began and ended, which involved only a legal issue. Defendant filed a Response on February 19, 2002, arguing that Plaintiff's Motion was premature because of the relative lack of discovery. Plaintiff filed a Reply to Defendant's Response on March 4, 2002, again arguing that there were no facts in dispute. On May 1, 2002, the case was transferred to this Court after Judge Echols recused himself. Defendant then filed a Motion for Summary Judgment on all of Plaintiff's claims on May 31, 2002. After being granted leave to file a late response, Plaintiff filed a Response (entitled "Motion in Opposition") to Defendant's Motion for Summary Judgment on July 15, 2002. Defendant filed a Reply on July 22, 2002.

## II. MOTION FOR SUMMARY JUDGMENT

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In considering a motion for summary judgment, a court must view all facts and inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Nevertheless, the nonmoving

party cannot rest on its pleadings, but must come forward with specific facts demonstrating that there is a genuine issue for trial. *Id.;* Fed.R.Civ.P. 56(e). There is a genuine dispute about a material fact only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Thus, the nonmoving party cannot survive summary judgment with only allegations and expert affidavits that are merely conclusory assertions about ultimate legal issues. *See Wade v. Knoxville Utilities Board,* 259 F.3d 452, 463 (6th Cir.2001); *Williams v. Ford Motor Co.,* 187 F.3d 533, 543–44 (6th Cir.1999).

## III. DISCUSSION

### A. The Family Medical Leave Act Claim

#### (1) The Family Medical Leave Act and 29 C.F.R. § 825.208

The FMLA entitles eligible employees to a total of twelve workweeks of leave during any twelve-month period for several reasons, including "because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1) (2002). The parties do not dispute that Plaintiff is an eligible employee, and that she took leave for a serious health condition. The only dispute is over when the twelve weeks began and ended.

Plaintiff cites 29 C.F.R. § 825.208, which states: "In all circumstances it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee ... based only on information received from the employee." 29 C.F.R. § 825.208(a). If the employer does not have sufficient information about the rea-

son for the employee's leave, "the employer should inquire further of the employee or the spokesperson to ascertain whether the paid leave is potentially FMLA-qualifying." *Id.* If an event occurs during accrued paid vacation leave which requires FMLA-qualifying leave, the employer may count the leave used after the FMLA-qualifying event against the employee's twelve-week entitlement. *Id.* at § 825.208(a)(2).

Several Circuits have rejected this regulation, however, because the FMLA is meant to make it unlawful for the employer to impede the employee's exercise of their right to leave, not to enable an employee to sue for failure to give notice. *See Sarno v. Douglas Elliman–Gibbons & Ives, Inc.*, 183 F.3d 155, 162 (2d Cir.1999). The Eighth Circuit explicitly struck down § 825.208 and a related provision § 825.700 insofar as they converted the FMLA's mandated leave into an additional twelve weeks of leave unless the employer specifically notifies the employee that she is using her FMLA leave. *Ragsdale v. Wolverine Worldwide, Inc.*, 218 F.3d 933, 937 (8th Cir.2000). The court found that, because the plaintiff would not have been able to return to work after the twelve-week period even if notified, to allow her to bring an FMLA claim "would be an egregious elevation of form over substance; a result clearly not contemplated by the FMLA." *Id.* at 940. The Eleventh Circuit similarly found § 825.208 invalid and unenforceable. *McGregor v. Autozone, Inc.*, 180 F.3d 1305, 1308 (11th Cir. 1999). The United States Supreme Court recently affirmed the Eighth Circuit, although specifically only striking down § 825.700. *Ragsdale v. Wolverine World Wide, Inc.* 535 U.S. 81, 122 S.Ct. 1155, 1162, 152 L.Ed.2d 167 (2002). Thus, while § 825.208 has not been explicitly struck down by the Supreme Court, its status is tenuous at best.

In the Sixth Circuit the precedent is less clear. In *Cehrs,* the Sixth Circuit held that, when there was a dispute over the dates of FMLA leave but the employee was clearly unable to return to work within the period, "it would be elevating form over substance to say that the effective termination date chosen by [the employer] is meaningful to the Court's analysis under the FMLA." *Cehrs v. Northeast Ohio Alzheimer's Research Center,* 155 F.3d 775, 785 (6th Cir.1998) (quoting the district court). Thus, summary judgment for the employer is appropriate when the employee could not have returned to work at the end of the FMLA leave. *Id. See Hicks v. Leroy's Jewelers, Inc.,* 225 F.3d 659, 2000 WL 1033029, *4 (6th Cir. July 17, 2000) (unpublished opinion) (holding that the court need not address the propriety of involuntarily placing the employee on FMLA leave because the employee's "failure to return to work within 12 weeks of even her proposed leave date precludes recovery under the Act"); *Covucci v. Service Merchandise Co., Inc.,* 178 F.3d 1294, 1999 WL 115531, *5 (6th Cir. Feb.8, 1999) (unpublished opinion) (holding that, although the employer may have committed technical violations of the FMLA by failing to designate the leave as FMLA leave as required by § 825.208, "it would be an egregious elevation of form over substance to allow Covucci an additional twelve weeks of leave specifically coded as FMLA leave").

More recently, however, the Sixth Circuit held that, even if an employee cannot return to work at the end of the twelve-week period, the employee can still bring an FMLA claim if she was not notified that the leave was FMLA-designated. *Plant v. Morton Int'l, Inc.,* 212 F.3d 929, 935–36 (6th Cir.2000). This holding was based on the notion that technically the FMLA leave had not yet started to run because the employee was not notified.

*Id.* The Court distinguished *Cehrs* by specifically referring to § 825.208(c) and the fact that the employer was attempting to count paid leave as FMLA leave. *Id.* at 935. Thus, *Plant* may not be applicable if the Court assumes that Plaintiff's FMLA dates are accurate and does not include her vacation time as FMLA leave. Additionally, *Plant* seems to stand in contrast to earlier Sixth Circuit precedent because the court felt constrained by § 825.208. Since several other circuits and now the Supreme Court have rejected the use of that regulation to provide more than twelve weeks of leave, *Plant* is not controlling. Finally, subsequent to *Plant* the Sixth Circuit has held that when an employee was placed under work restrictions which would not have allowed her to return to her position within twelve weeks, she could not point to any economic benefits she lost as a result of her employer denying her FMLA leave, so summary judgment for the employer on the FMLA claim was appropriate. *Williams v. Toyota Motor Manufacturing, Kentucky, Inc.,* 224 F.3d 840, 845 (6th Cir.2000), *rev'd on other grounds,* 534 U.S. 184, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002).

In *Holmes v. e.spire Communications,* a Maryland district court was faced with a situation very similar to the case at bar. 135 F.Supp.2d 657 (D.Md.2001). In that case, the plaintiff-employee was on a scheduled vacation when her doctor told her to remain under medical care for the remainder of her pregnancy. *Id.* at 659. The defendants-employers approved the leave, and then terminated plaintiff when she did not return after twelve weeks. *Id.* The defendants claimed the FMLA leave started when plaintiff began her scheduled vacation, while plaintiff contended that the leave did not begin until she would have returned to work after the scheduled vacation. *Id.* at 664. The court noted that the defendants were allowed to require plaintiff to substitute her vacation time for FMLA leave, 29 U.S.C. § 2612(d)(2), but that there was no evidence that they notified her of such a designation, 29 C.F.R. § 825.208(b). *Id.*[1] Nevertheless, the court noted that the absence of notice was not itself an FMLA violation, but merely pushed back the date when the leave started. *Id.* at 665 n. 9. The court found no FMLA violation, despite the employer using the wrong dates for the FMLA leave, because the employee was unable to return to work on the date the leave should have ended, and thus she had no right to be restored to her former position. *Id.* at 667. The plaintiff argued that, had she known when the FMLA leave was going to expire, she would have returned to work to save her job. *Id.* at 665. The court rejected this argument because the plaintiff in her own deposition had stated that she could not have returned to work on that date. *Id.* Thus, the defendants' motion for summary judgment was granted. *Id.* at 667.

Similarly, the Eighth Circuit affirmed a granting of the employer's motion for summary judgment, even though the plaintiff claimed he could have returned to work at the end of the FMLA leave, because the record established that his doctor recommended that he not return to work without restrictions. *Reynolds v. Phillips & Temro Industries, Inc.,* 195 F.3d 411, 414 (8th Cir.1999). The employee had sought and obtained insurance benefits based on this doctor's forms stating that he had a continuing disability. *Id.* The court held that the record as a whole established that the employee was not able to perform the essential functions of his job at the end of

---

**1.** The court held that general notice of company policy in a handbook was not sufficient notice. *Id.* at 665.

the twelve weeks. *Id. See Oatman v. Fuju Photo Film, Inc.*, 2002 WL 245972, at *3 (N.D.Tex. Feb.15, 2002) (granting defendant's motion for summary judgment, despite a dispute about when the FMLA leave started, when the employee admitted that he was still unable to perform the essential functions of his former job); *Barry v. Wing Memorial Hospital*, 142 F.Supp.2d 161, 166 (D.Mass.2001) ("Since the undisputed evidence indicates that Barry is completely disabled and cannot return to work, she does not have a statutory right to reinstatement under the FMLA.").

With less clear evidence, however, other courts have found that it would be pure speculation to hold that an employee could not have returned to work at the time the FMLA leave should have expired. *See Viereck v. City of Gloucester City*, 961 F.Supp. 703, 709 (D.N.J.1997). If the employee knew she could either return to work or lose her job, she might have been able to reschedule doctors appointments or convince her doctor to permit her to return to work early. *Id.* According to the *Viereck* court, whether the employee might have been able to return to work would be a factual inquiry, so summary judgment for the employer would not be appropriate. *Id.*

### (2) Plaintiff's Ability to Return to Work

■ The record in this case suggests that Defendant did not adequately notify Plaintiff that her leave was FMLA-designated, or that it was going to retroactively count her vacation time against that leave. If Defendant was unclear about whether the leave was FMLA leave or when Plaintiff became unable to work, it should have inquired further. Even assuming, however, that Plaintiff's dates for her FMLA are correct (so that she should not have been terminated unless she did not return by March 27, 2001), she cannot show that she was injured as a result of Defendant's

actions because she could not have returned to work by that date. *See Williams v. Toyota Motor Manufacturing, Kentucky, Inc.*, 224 F.3d 840, 845 (6th Cir.2000).

The record overwhelmingly supports the conclusion that Plaintiff was not able to return to work at the end of her FMLA leave. Plaintiff's treating physician during this time was Dr. Susskind, who had not released Plaintiff to return to work by March 27, 2001. Plaintiff admits that Dr. Susskind as of March 14, 2001 had not given her a release to return to work, and still had not released her as of her deposition in March 2002. (Plaintiff's Deposition at 83–84.) Plaintiff's next appointment after March 14, 2001, was to be in April—too late even under Plaintiff's time frame for her to return to work. (Dr. Susskind's Deposition at 195.) Plaintiff also admits that she did not tell Defendant that she was able to come back to work, because she had not been released. (Plaintiff's Deposition at 128.) Dr. Susskind, in fact, has never released Plaintiff to return to work. (Dr. Susskind's Deposition at 205.) Plaintiff admits that she has not yet been released to work, in fact using that to argue for damages. (Complaint at ¶ 48.) Defendant's letter stated that Plaintiff could reapply for her job when she returned to health, but Plaintiff has never done so. Plaintiff has also not applied for other jobs since this time. (Ms. Black's Deposition at 65.)

Plaintiff admitted that, since her seizure in January 2001, she was still unable to drive and was unsteady on her feet. (Plaintiff's Deposition at 132.) Dr. Susskind also testified that on September 17, 2001, Plaintiff displayed "recent irrational behavior, nearly psychotic" because of her medication. (Dr. Susskind's Deposition at 142.) Plaintiff agreed with this diagnosis. (Plaintiff's Deposition at 203.) Although Dr. Susskind claims that Plaintiff could

have returned to work on some days in August 2001, she also stated that Plaintiff was not able to return to work in September 2001. (Dr. Susskind's Deposition at 145–46.) Dr. Susskind also testified that Plaintiff's seizures and narcolepsy were still not under control as of the date of her deposition, March 26, 2002. *Id.* at 135. Because of seizure, narcolepsy, and hypothyroid problems, Plaintiff could still not return to work as of this date. *Id.* at 136. Plaintiff's other treating physician, Dr. Coetzee, testified that, with Plaintiff's neurologic conditions, he "would be surprised her being able to work." (Dr. Coetzee's Deposition at 25.) Nevertheless, Plaintiff claims she could have returned to work in March 2001 if she had asked Dr. Susskind to change her medication. (Plaintiff's Deposition at 131, 139, 197.) Yet she claims that she could not have returned to work on May 9, 2001, or on September 17, 2001. *Id.* at 204–06. In August 2001 she also filed an application for Social Security disability claiming at that time she could not return to work. *Id.* at 198. In her deposition, Plaintiff even asserts that the FMLA was not applicable because she needed and should have been given six months of short-term disability leave. *Id.* at 210–11.

The crux of Plaintiff's Motion for Summary Judgment is her claim that Dr. Susskind "is prepared to unequivocally testify that Ms. Roberson's treatment regime could have been altered so as to allow an earlier return to work if necessary to protect her employment." (Plaintiff's Motion for Summary Judgment at 16.) The only evidence of this assertion is Dr. Susskind's deposition, in which she claims that she "personalty" thinks that Plaintiff could have returned to work on March 13, 2001, despite her memory problems. (Dr. Susskind's Deposition at 204–05.) However, Dr. Susskind did not release her to return to work at that time, because she was changing her medication. *Id.* at 205. These statements, read together, suggest that in her medical opinion Plaintiff was not able to return to work, although in her "personal opinion" she could have returned if required to keep her job. Dr. Susskind also testified that she was under the impression that Plaintiff could stay out of work for another month and keep her job. *Id.* at 205. This assertion either supports a finding that Dr. Susskind was not releasing a patient who was healthy, or that she would be willing to release a patient who was still sick.[2] Plaintiff's raw assertions

**2.** In any respect, Dr. Susskind's testimony is suspect. She admitted to filling out a credit form in which she stated that Plaintiff was totally disabled and would *never* be able to return to work. (Dr. Susskind's Deposition at 177; Credit Disability Form at 1.) At her deposition, Dr. Susskind testified as follows:

Q. Was that intended to communicate to whoever this form was sent to that Ms. Roberson was in your medical opinion totally disabled at the time you filled the form out?
A. No.
Q. Okay. Then why does it say—to "Is patient now totally disabled," why is the box "Yes" checked?
A. This is a "Credit Disability, Capitol One, Payment Protection" form.
Q. Yes.

A. My understanding was it was to keep her from going bankrupt.
Q. And so you checked whichever box you thought was needed to keep her from going bankrupt?
A. To keep her from going bankrupt.
Q. So this does not accurately reflect the facts, that box checked "Yes" to "totally disabled"?
A. No. I would have done this for anyone. Medically, I will.
(Dr. Susskind's Deposition at 177–78.) As this line of questioning continued, Dr. Susskind testified that she did not really believe that Plaintiff would never be able to return to work, despite the fact that she checked the box marked "never" for when Plaintiff would be able to return to work on this credit disability form. *Id.* at 180. Dr. Susskind explained that she did not check the box marked

that she could have returned to work are insufficient to survive Defendant's Motion for Summary Judgment. *See Wade v. Knoxville Utilities Board,* 259 F.3d 452, 463 (6th Cir.2001). The medical record and facts, despite her current unsupported assertions, demonstrate that Plaintiff could not have returned to work on March 27, 2001. *See Reynolds v. Phillips & Temro Industries, Inc.,* 195 F.3d 411, 414 (8th Cir.1999); *Holmes v. e.spire Communications,* 135 F.Supp.2d 657 (D.Md.2001).

### (3) Defendant's Letter of Termination

■ Plaintiff also asserts that she would have been able to return to work if her problems had not worsened after she was terminated. Thus, she asserts, Defendant is partially responsible for her failure to return to work by the end of March 2001. Dr. Susskind testified that Plaintiff's being terminated helped lead to her depression, and that after Plaintiff was terminated she was unable to go back to work. (Dr. Susskind's Deposition at 117, 133–34.)

In *Barry v. Wing Memorial Hospital,* the employee similarly argued that she would have been able to return to work, but once she received a letter from her employer telling her that her position had been eliminated she experienced "an emotional blow" that caused her to relapse and be unable to return to work. 142 F.Supp.2d 161, 166 (D.Mass.2001). The court held that, even if this assertion were true, it did not help the employee's FMLA claim. *Id.* As that court stated:

> The essence of her argument is that by sending the letter the Hospital [her employer] either caused or contributed to

her injury. Barry [the employee] may be able to pursue this theory in a claim under worker's compensation statutes or for negligence under some theory perhaps of intentional infliction of emotional distress. The FMLA, however, does not address the cause of an employee's injury. Instead, the FMLA entitles an employee to take a medical leave of absence and addresses the employee's rights upon return from leave. As a result, the fact that the letter may have caused plaintiff's relapse, if accepted as true, does not help her FMLA claim. *Id.* Thus, Plaintiff's FMLA claim in not strengthened by her accusations that Defendant's letter caused or exacerbated some of her health problems.

Plaintiff's FMLA claim must fail because she could not have returned to work after her FMLA leave even if the dates she asserts are used. Defendant's Motion for Summary Judgment on Plaintiff's FMLA claim is granted.

### B. Americans With Disabilities Act Claim

■ Plaintiff also claims that Defendant discriminated against her in violation of the ADA, 42 U.S.C. § 12112. In order to sustain an ADA claim, a plaintiff must prove: (1) she is disabled within the meaning of the ADA, (2) she is otherwise qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) her employer discharged her solely because of her disability. *Branch v. Bridgestone/Firestone, Inc.,* 108 F.Supp.2d 897, 901 (M.D.Tenn.2000) (citing

"indefinite" as to when she would return because "[t]he indefinite forms that I fill out get sent back to me almost always.... If I put 'Never,' it wasn't too late for her to go back. She could always go back anyway." *Id.* at 180–81. Dr. Susskind explained that she did not think this was a misrepresentation on the form because: "A person who needs some-

thing done who's very ill so that they don't lose their car, I would do this." *Id.* at 181. After asked "What about someone who's under threat of losing their job; is that also an instance where you would be willing to adjust what you put on a form," Dr. Susskind replied "No ... This is just a credit form." *Id.* at 182.

*McKay v. Toyota Motor Mfg.*, 110 F.3d 369, 371 (6th Cir.1997); *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1178 (6th Cir.1996)).

### (1) Disability

The Supreme Court defined disability under the ADA in *Toyota Motor Manufacturing, Kentucky, Inc. v. Williams*, 534 U.S. 184, 122 S.Ct. 681, 690, 151 L.Ed.2d 615 (2002). The claimant must have a permanent or long-term physical or mental impairment which substantially limits a major life activity, meaning that the impairment prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives. *Id.* at 690–91.

■ A health problem like epilepsy can be a qualifying disability. While the court should take into account the effects of any medication on the disability, just because medication is taken to control the problem does not mean that the person is no longer substantially limited. *Sutton v. United Air Lines*, 527 U.S. 471, 488, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999); *EEOC v. J.H. Routh Packing*, 246 F.3d 850, 855 (6th Cir.2001). In her deposition, however, Dr. Susskind testified that she considered herself an expert on the ADA and thought that Plaintiff had a disability but was not disabled within the meaning of the ADA. (Dr. Susskind's Deposition at 232, 235.) Nevertheless, Plaintiff clearly has some disability which has limited her ability to work and to drive an automobile. Defendant was aware of these disabilities.

Whether Plaintiff has the requisite disability to make out an ADA claim need not be decided because she clearly cannot meet the other elements of an ADA claim.

### (2) Qualified to Work

■ Since Plaintiff still has not been released to work, she is not "qualified" under the ADA. 42 U.S.C. § 12111(8)

("The term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires."). There is no evidence of any reasonable accommodation Defendant could have made so that Plaintiff could have returned to work. In fact, Plaintiff claimed to the Social Security Administration that in August 2001 she was totally disabled. (Plaintiff's Deposition at 188–192, 198.) Plaintiff's only response was to testify that, if given six months of short-term disability, then she *"probably* would have been able to perform my job." *Id.* at 211 (emphasis added).

■ Additionally, Plaintiff does not dispute that she never requested any sort of accommodation from Defendant. Under the regulations, the employee has the initial burden of requesting an accommodation; the employer is not required to speculate as to the extent of the employee's disability or need for accommodation. *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046–47 (6th Cir.1998). Thus, If the employee never requests to return to work, for an extension of leave, or for some kind of accommodation, the employer does not violate the ADA by terminating her. *Id.* at 1047. Additionally, the employee has the initial burden of proposing an accommodation, showing that accommodation would be objectively reasonable to the employer, and establishing that she is capable of performing the essential functions of the job with the proposed accommodation. *Monette v. Electronic Data Systems Corp.*, 90 F.3d 1173, 1183–84 (6th Cir.1996).

### (3) Discharged Because of Disability

■ Defendant argues that it terminated Plaintiff not because of her disability but for a legitimate reason: excessive ab-

sences. Plaintiff responds that the absences should have been part of her FMLA leave, so that her termination in violation of the FMLA was necessarily an illegitimate termination. (Plaintiff's Response to Defendant's Motion for Summary Judgment at 35.) As noted above, however, this Court has determined that Plaintiff's termination did not violate the FMLA. Nevertheless, the termination may have been premature if the FMLA dates were wrong. If this is true, Plaintiff must prove that Defendant discharged her solely because of her disability. Even if Defendant was mistaken about the dates, it did not terminate her because of her disability, but because of the absences. Plaintiff offers no proof, other than the alleged FMLA violation, to the contrary.

Thus, Plaintiff has not sufficiently alleged any of the three elements of a proper ADA claim. Summary judgment for Defendant is appropriate.

## C. Remaining Claims

### (1) Tennessee Handicap Act

The Tennessee Handicap Act (THA) prohibits discrimination in hiring and firing based solely on any physical, mental, or visual handicap, unless that handicap prevents the applicant from performing the duties required by the employment sought. Tenn.Code Ann. § 8–50–103(a). Thus, a plaintiff must prove: (1) she was qualified for the position, (2)

she was disabled, and (3) she suffered an adverse employment action because of that disability. *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000). Although not bound by federal anti-discrimination law, Tennessee courts do look to federal law for guidance in enforcing state anti-discrimination law. *Id.* The THA also requires that the impairment "substantially limits a major life activity," or that the employer treated the employee as if the impairment substantially limited a major life activity. *Id.* at 706. The THA elements are very similar to those of the ADA, but do not include a "reasonable accommodation" component.

As in her ADA claim, Plaintiff claims that her absences were due to her disability, and that Defendant knew or should have known that was the reason for her absences and not terminated her for those absences. Plaintiff reiterates her arguments made for FMLA and ADA relief in arguing for relief under the THA. The analysis above concerning the ADA applies equally to Plaintiff's THA claim.[3] Plaintiff has not alleged sufficient facts to prove that she was handicapped or that Defendant fired her because of that handicap.

### (2) Negligent Infliction of Emotional Distress

Plaintiff also claims that Defendant should be liable for negligent infliction of emotional distress.[4] Plaintiff sim-

---

**3.** Plaintiff also attempts to use the "indirect method," by which the plaintiff proves a *prima facie* case of disability discrimination, and then the employer must articulate a legitimate nondiscriminatory reason for the adverse employment action. *Barnes,* 48 S.W.3d at 708. In order to prove a *prima facie* case, the plaintiff must show that: (1) she is a member of a protected class, (2) her work performance met the employer's legitimate expectations, (3) she sustained an adverse employment action, and (4) employees not in the protected class were treated more favorably. *Id.* The same analysis concerning Defendant's

legitimate reasons for terminating Plaintiff apply to this method as well.

**4.** In her Complaint, Plaintiff originally claimed intentional infliction of emotional distress as well. *See* Complaint at ¶¶ 37–41. In her Motion for Summary Judgment and all subsequent filings, however, Plaintiff only refers to a claim for negligent infliction of emotional distress. Defendant's Motion for Summary Judgment includes an argument for summary judgment on the intentional infliction of emotional distress claim. Failure to respond with respect to a claim indicates that

ply cites the elements and then refers to her arguments under the FMLA and ADA. She does not specifically lay out why she has met each element of negligent infliction of emotional distress. In *Camper v. Minor*, the Tennessee Supreme Court held that a plaintiff alleging negligent infliction of emotional distress has to prove all five elements of negligence— duty, breach, injury or loss, causation in fact, and proximate or legal causation—in order to survive summary judgment. 915 S.W.2d 437, 446 (Tenn.1996). The plaintiff must prove she suffered a "serious or severe emotional injury" under which a reasonable person would be unable to adequately cope. *Id.* Plaintiff's bald accusations are insufficient to survive summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Summary Judgment and GRANTS Defendant's Motion for Summary Judgment.

An appropriate order will enter.

there is no opposition to the motion. *See* Local Rule 8(b)(3). As a result, summary judgment for Defendant is granted with respect to Plaintiff's claims for intentional infliction of emotional distress.