IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 6, 2003 Session

# RALPH SASSER v. QUEBECOR PRINTING (USA) CORP., D/B/A QUEBECOR PRINTING CLARKSVILLE

### Appeal from the Circuit Court for Montgomery County
### No. 60000542     Ross H. Hicks, Judge

---

### No. M2003-00287-COA-R3-CV - Filed March 12, 2004

---

This is a case involving an alleged hostile work environment based on disability.  The employee worked in the maintenance department of a large printing facility.  He had an on-the-job accident which resulted in the amputation of his leg.  To accommodate his disability, the employer created a clerical position for him.  The employee's work space was a "community desk" located in the maintenance area, an area to which numerous employees had regular access.  The employee reported to the employer several incidents of alleged harassment, such as grease under the desk, lunch residue being left on the desk, dirty footprints in the desk's chair, and his computer monitor defaced with a profane statement.  The employer moved the employee to a private office, and there were no further incidents.  The employee filed a complaint alleging, inter alia, a hostile work environment based on disability, his amputated leg.  The trial court granted summary judgment in favor of the employer. We affirm, finding that the incidents do not amount to harassment, and that there is no evidence that the conduct was either directed at the employee or linked to his disability.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and DAVID R. FARMER, J., joined.

James L. Harris, Nashville, for the appellant Ralph Sasser.

Daniel C. Todd, Nashville, and C. Dan Wyatt, II, Atlanta, Georgia, for the appellee Quebecor Printing (USA) Corp., d/b/a Quebecor Printing Clarksville.

### OPINION

Plaintiff/Appellant, Ralph Sasser ("Sasser"), worked in the maintenance department of Defendant/Appellee, Quebecor Printing (USA) Corp., d/b/a Quebecor Printing Clarksville

("Quebecor").[1] Sasser's job duties included repairing and maintaining the air conditioning units at Quebecor's Clarksville facility. In 1999, Sasser suffered an injury while performing his job duties for Quebecor. Sasser filed a worker's compensation claim for his job-related injury. The injury resulted in the amputation of his leg.

Because of the amputation of his leg, Sasser was no longer able to perform his maintenance job. Consequently, Quebecor created a clerical position for Sasser in Quebecor's maintenance department. When he began in the newly-created position, Sasser temporarily shared an office with a co-worker. In March 2000, Quebecor moved Sasser's workspace to the maintenance shop. In the maintenance shop, Sasser worked at a community desk in an open area, where work orders, equipment catalogues, and books were kept. Approximately 600 employees had access to the maintenance shop area, and, consequently, access to the desk Sasser used. The maintenance department was run twenty-four hours per day. The desk Sasser used held a telephone which other employees were permitted to use. Near the desk there was a machine used by members of the maintenance department, as well as employee mail slots. Sasser was provided a computer, which was on the desk.

Once he moved to the desk in the open maintenance area, Sasser alleges, a series of disturbing incidents occurred. The area in which the desk was located in the maintenance room was described as "greasy," and on at least one occasion, Sasser's pants became soiled from grease under the desk. On other occasions, Sasser would find at the desk the residue from another employee's lunch, such as ketchup, mayonnaise, wrappers, chicken bones and soft drinks. In one incident, someone wrote graffiti in "white-out" on the computer monitor, saying, "F--k you, you lazzy [sic] ass."[2] Footprints were left in the desk chair, and pencils were found in the docking station for the computer, preventing Sasser from using it. Sasser's time sheets were stolen, and he was accused of causing a fire in a waste basket.

Sasser complained about these incidents to Quebecor's management. Quebecor responded to Sasser's complaints by interviewing employees and offering a $1,000 reward for any information relating to the computer graffiti incident. The company could not determine who was responsible. In June 2000, Quebecor relocated Sasser to a private office. Once Sasser moved to the private office, no further incidents took place.

On November 27, 2000, Sasser filed a lawsuit against Quebecor under the Tennessee Human Rights Act and the Tennessee Handicap Act. Sasser claimed that his amputated leg constituted a disability or a handicap under the statutes. He asserted that the incidents described above took place because of his amputated leg, and that he was the victim of a hostile work environment, retaliation,

---

[1] In the defendant's appellate brief, the name of the defendant company is said to be "Quebecor World Clarksville, Inc." The notice of appeal fails to list the defendant's name. Regardless of the defendant's correct name, in this appeal we refer to the defendant simply as "Quebecor."

[2] Sasser's complaint alleges that the word "ass" was used, but Sasser testified in his deposition that the word used was "bastard."

-2-

and discrimination due to his disability. Sasser asserted that Quebecor failed to take prompt remedial action to stop the harassment and discrimination. Sasser also averred that the incidents were retaliation for his filing of a worker's compensation claim when he injured his leg. The lawsuit also included claims of intentional infliction of emotional distress, under a theory of respondeat superior, and negligent maintenance of an unsafe working environment. On February 21, 2001, Quebecor laid Sasser off, and Sasser amended his complaint to include retaliatory discharge under the Tennessee Human Rights Act.

Discovery ensued. In his deposition, Sasser acknowledged that, when he complained of the incidents to Quebecor's management, he did not attribute them to his disability. Sasser admitted that, other than the location of the incidents, he had no evidence that the actions were directed at him, and no evidence of why they occurred or who was responsible. He conceded that, if the incidents were directed at him, it may have been simply because a co-worker disliked him. Sasser's supervisor, Martin Skerritt, testified that, when Quebecor posted a $1,000 reward for information on who had put the profane graffiti on the computer Sasser used, no one came forward with information. Skerritt testified that, at the time the graffiti incident occurred, the maintenance department, in which Sasser worked, had received a pay raise. This angered employees in the company's production department, who viewed the maintenance employees as lazy and unworthy of a raise.

On October 4, 2002, Quebecor filed a motion for summary judgment. After it was filed, Sasser voluntarily dismissed his retaliation claims. In his opposition to the summary judgment motion on the remaining claims, Sasser asserted that there were numerous genuine issues of material fact, rendering the case inappropriate for summary judgment. A hearing was held on November 22, 2002.

At the conclusion of the hearing, the trial judge issued an oral ruling. The trial court granted the motion for summary judgment, holding that the evidence did not amount to harassment, and that even if it did, there was no evidence that the alleged harassment took place because of Sasser's disability. The trial judge elaborated: "There simply is no evidence from which the Court could conclude that Mr. Sasser was harassed. All the incidents cited, with the exception of the computer screen incident, are just simply the kind of thing that Mr. Sasser should have expected to occur in a maintenance room environment . . . ." The trial court addressed the computer screen incident: "Obviously the matter of the computer screen is a serious issue. But given the dispute that was going on between the maintenance workers and other workers, there is simply no evidence in the record to support the theory that that was directed at Mr. Sasser individually." The trial court held: "There is no evidence of intentional acts directed at Mr. Sasser."

The trial court also found that, even if the incidents amounted to harassment, there was no evidence that it was related to Sasser's disability. Regarding the computer incident, the trial court held: "[T]here is no evidence in the record, even if it were directed to Mr. Sasser, to show that it was anything more than an assumption . . . or a feeling on somebody's part that he was lazy. In other words, there is no relationship to the . . . alleged handicap or disability." Furthermore, the court held, "There is simply no proof in the record on *any* of these theories that if these actions were directed

specifically at Mr. Sasser, that they were directed at him because of his disability" (emphasis added). Finally, the trial court held that there was no evidence that the alleged harassment was pervasive, that Quebecor's investigation was unreasonable, or that Quebecor condoned the alleged harassment.[3] The trial court issued a written order on January 8, 2003, consistent with its oral ruling, dismissing all of Sasser's claims, including his claims of intentional infliction of emotional distress and negligent maintenance of an unsafe work environment. From that order, Sasser now appeals.

Summary judgment should be granted only when the moving party shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tenn. R. Civ. P. 56.04. On a motion for summary judgment, the court must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). In *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993), our Supreme Court stated:

> Once it is shown by the moving party that there is no genuine issue of material fact, the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 [now Rule 56.06] provides that the nonmoving party cannot simply rely upon his pleadings but must set forth *specific facts* showing that there is a genuine issue of material fact for trial.

*Id.* at 211 (citations omitted) (emphasis in original).

Unless the facts and the legal conclusions drawn from the facts reasonably permit only one conclusion, summary judgment is inappropriate. *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn. 1995). As summary judgment involves only questions of law, the trial court's grant of summary judgment is afforded no presumption of correctness. *Bain*, 936 S.W.2d at 622. Therefore, our review of this case is *de novo* on the record. *Warren v. Estate of Kirk*, 954 S.W.2d 722, 723 (Tenn. 1997).

On appeal, Sasser asserts that there are several issues of material fact concerning whether the incidents complained of were motivated by his disability. Sasser contends that the trial court erred in holding that there was no evidence supporting his claim and argues that the fact that all of the incidents occurred at his desk, coupled with his disability and his new administrative position, serve as circumstantial evidence. Sasser avers that this circumstantial evidence creates a genuine issue of material fact and requires a trial on the merits to determine whether he was harassed due to his

---

[3] The trial court observed:

> What we have really is evidence that you had an employee, for whom a company had bent over backwards, who was disgruntled because he was being moved, and who says there is going to be trouble, and he went out and found trouble. And the trouble is simply not such that this Court or anyone else-the company should feel obligated to protect him from. You can't protect employees from dislike. And that's what I'm being asked to do here.

disability. He also argues that he has shown sufficient evidence to prove his intentional infliction of emotional distress and negligence claims.

The record in this case includes Quebecor's statement of undisputed facts in support of its motion for summary judgment, as well as Sasser's response thereto. In the response, Sasser cites no evidence contradicting Quebecor's undisputed facts. Sasser couches his argument in terms of genuine issues of fact, but in reality Sasser's argument is that the undisputed evidence is subject to differing interpretations. We must, then, take the strongest legitimate view of these facts in the light most favorable to Sasser, allow all reasonable inferences in Sasser's favor, and determine from that whether the trial court erred in granting summary judgment to Quebecor. *Bain*, 936 S.W.2d at 622.

We first address Sasser's disability harassment claim. Section 8-50-103 of the Tennessee Code Annotated, also known as the Tennessee Handicap Act ("THA"), provides: "There shall be no discrimination in the hiring, firing and other terms and conditions of employment of . . . any private employer . . . based solely upon any physical, mental or visual handicap . . . ." Tenn. Code Ann. § 8-50-103(a) (2002). A claim brought under the THA is analyzed under the same principles as those utilized for the Americans with Disabilities Act ("ADA"). *See, e.g.*, *Roberson v. Cendant Travel Services, Inc.*, 252 F. Supp. 2d 573, 583 (M.D. Tenn. 2002) (citing *Barnes v. Goodyear Tire & Rubber Co.*, 48 S.W.3d 698, 705 (Tenn. 2000)). To establish an ADA claim of hostile work environment based on disability, a plaintiff must prove that: (1) "[he] was disabled; (2) [he] was subject to unwelcome harassment; (3) the harassment was based on [his] disability; (4) the harassment unreasonably interfered with [his] work performance; and (5) the defendant either knew or should have known about the harassment and failed to take corrective measures." *Trepka v. Bd. of Educ.*, No. 00-4063, 2002 WL 104801, at *4 (6th Cir. Jan. 24, 2002). To prove a hostile work environment, the employee must show conduct that is " 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.' " *Harris Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). Conduct that is "merely offensive" does not rise to the level of that which will support a claim of hostile work environment. *Id.*

This legal standard must be applied to the facts of this case. The undisputed facts are that, after Sasser's injury, Quebecor created a clerical position for him in order to accommodate his disability. Sasser moved from a private office to a desk in the open maintenance area, a desk that was accessible to and used by the maintenance employees. After the move, the following incidents of alleged harassment occurred:

1. A person wrote "F--k you, you lazzy [sic] ass" on the monitor of the computer Sasser used;

2. On occasion, grease under the desk in the maintenance department soiled Sasser's pants;

3. Sasser sometimes found on the desk the residue of other employee's lunches, such as discarded food and wrappers;

4. Dirty footprints were sometimes in the chair at the desk Sasser used;

5. Sasser once found a pencil in the docking station for the computer;

6. Sasser's time sheets were once stolen; and

7. Sasser was accused of causing a fire in a waste basket.

Quebecor investigated and put up a reward for information on the graffiti on the computer monitor, to no avail. After Sasser was moved back to a private office, the alleged harassment ceased.

Viewing the evidence as a whole, we must agree with the trial court's assessment. The most serious incident, the graffiti written on the computer monitor, took place against a backdrop of generalized hostility towards workers in the maintenance department as a result of a pay dispute. The remaining incidents can only be deemed annoyances, not out of line with what would be expected, considering the setting, in the maintenance area of a large printing facility. Moreover, all of the incidents took place in an area to which hundreds of employees had access, and, in fact, all had the right to use the desk and the surrounding area. Under these circumstances, there is no evidence that the incidents were directed at Sasser, which Sasser freely admits. Most of all, the record is devoid of any evidence indicating that any of the occurrences were based on Sasser's disability. Indeed, Sasser admits that when he complained of these incidents to Quebecor's management, he did not tell them that he attributed the conduct to his disability. Considering all of these factors, it is clear that the trial court correctly granted Quebecor summary judgment on Sasser's claims of disability discrimination.

Next, we address Sasser's claim of intentional infliction of emotional distress. For Sasser to recover on this claim, he must prove intentional or reckless conduct that is intolerable by a civilized society and that resulted in serious mental injury. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The nature of the conduct must be " 'so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.' " *Id.* at 623 (quoting *Medlin v. Allied Inv. Co.*, 398 S.W.2d 270, 274 (Tenn. 1966)) . Even assuming Sasser had shown that any of the occurrences were directed at him, none of the incidents, taken together or separately, amount to more than " 'insults, indignities, threats, annoyances, petty oppression or other trivialities,' " none of which are recoverable under the tort. *Id.* at 622 (quoting *Medlin*, 398 S.W.2d at 274).

Sasser also alleges that Quebecor negligently failed to provide him with a reasonably safe work environment. *See Overstreet v. Norman*, 314 S.W.2d 47, 50 (Tenn. Ct. App. 1957). Clearly, the evidence does not support this claim, and Sasser's argument is without merit. Therefore, we affirm the trial court's decision to grant summary judgment in favor of Quebecor.

Quebecor requests an award of damages under section 27-1-122 of the Tennessee Code Annotated, arguing that this appeal is frivolous. Although the issue is close, we decline to award damages. All other issues raised on appeal are pretermitted.

The decision of the trial court is affirmed. Costs are taxed against Plaintiff/Appellant Ralph Sasser and his surety, for which execution may issue if necessary.

_____
HOLLY M. KIRBY, JUDGE