# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-3745

_____

Edward Reynolds,             *
                                 *
          Appellant,        *
                                 *   Appeal from the United States
     v.                           *   District Court for the District
                                 *   of Minnesota
Phillips & Temro Industries, Inc.,    *
                                 *
          Appellee.         *

_____

Submitted: June 16, 1999
Filed: October 29, 1999

_____

Before LOKEN, MAGILL, Circuit Judges, and JONES[1], District Judge.

_____

JONES, District Judge.

Edward Reynolds brought this action against his former employer, Phillips & Temro Industries, Inc. ("Phillips"), claiming he was discharged from his employment in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.* The district court granted summary judgment in favor of Phillips. We affirm.

_____

[1]The Honorable John B. Jones, United States District Judge, United States District Court for the District of South Dakota, sitting by designation.

# I. BACKGROUND

Reynolds began working as a shipping attendant in Phillips' shipping and receiving department in October 1994. As a shipping attendant, Reynolds lifted heavy loads up to 100 pounds, lifted items above his shoulders, climbed, was on his feet all day and worked a minimum of ten hours per shift. While en route to work on January 8, 1996, Reynolds was involved in a car accident. He reported to work on the day of the accident but was excused to seek medical attention. Following an evaluation at the emergency room, Reynolds was diagnosed as suffering from a lumbar back strain for which a muscle relaxant and pain medication were prescribed.

Later on January 8, 1996 Reynolds contacted a chiropractor, Thomas Palashewski, D.C., because he continued to experience pain in his back. X-rays of Reynolds' spine revealed multiple subluxations of the cervical spine, the thoracic spine and lumbar spine. Reynolds' treatment consisted of manual spinal manipulation to help correct the areas of subluxation revealed in the x-rays. Dr. Palashewski treated Reynolds on seventy-four occasions from January 8, 1996 to May 16, 1997.

Dr. Palashewski concluded Reynolds should not return to work the week of January 8, 1996 and provided him with an "Authorization for Absence" form ("absence form") excusing him from work that week. Phillips excused Reynolds from work for the week of January 8-12, 1996. On January 15, 1996 Reynolds attempted to have a second absence form for the week of January 15-19, 1996 delivered to Phillips. However, Phillips asserts that the second form was not received during the week of January 15, 1996. Dr. Palashewski provided Reynolds with a third absence form for the week of January 22-26, 1996, which contained a statement that Reynolds would return to work four hours per day beginning on January 29, 1996. When Reynolds telephoned Phillips regarding the third absence form, he was informed that his employment had been terminated on January 18, 1996 pursuant to a company policy of automatic termination after three consecutive days of no show/no call. Reynolds was unsuccessful in his attempt to convince Phillips to reverse its termination decision.

Reynolds contends he could have returned to work on January 29, 1996 if Phillips has not terminated his employment. At that time, however, Dr. Palashewski recommended a twenty-five pound lifting restriction, no climbing, no walking or standing in excess of fifty percent of his working shift, a maximum work day of four hours and bending, lifting, twisting and lifting above shoulder level were restricted to fifty percent of his day.

Approximately six weeks after the accident, Reynolds completed and signed an application for no-fault economic loss benefits. On the application form, Reynolds inserted "1/8/96" as the date his disability from work began and inserted "N/A" under the heading "Date You Returned to Work." Reynolds asserts he did not certify on this application or any other form that he was unable to work due to a disability. His no-fault claims were assigned to Western National Insurance Company ("Western National"). Dr. Palashewski submitted a form to Western National on March 12, 1996 certifying that Reynolds had continuing disability from January 1, 1996 to March 3, 1996. The form also stated Reynolds was under work restrictions including a twenty-five pound lifting restriction, limited flexing, and a part-time schedule. Reynolds was under similar work restrictions through at least June 1996. As of March 3, 1997, Reynolds continued to be under several work restrictions, including a six- to eight-hour work day, a twenty-five pound lifting restriction and limited flexing and extension.

In the proceedings involving Reynolds' claim for unemployment compensation benefits, Phillips contended it terminated Reynolds' employment on the basis of misconduct. It was determined in April 1996 that Reynolds was not terminated for misconduct and he was, therefore, not disqualified from receiving unemployment compensation benefits. This decision was provided to Western National, and it continued to pay no-fault benefits to Reynolds. Reynolds received the policy limits of $20,000 for no-fault economic loss benefits.

In April 1996, Reynolds' counsel sent a letter to Phillips demanding that Reynolds be reinstated and alleging violations of the FMLA. Phillips did not respond to Reynolds' demand.

In September 1996, Dr. Palashewski completed a functional capacities evaluation of Reynolds, wherein he concluded Reynolds could sit, stand and walk for six hours, he could frequently bend, stoop, reach, push and pull. Dr. Palashewski opined, however, that Reynolds could never lift or carry over seventy-five pounds and could only occasionally lift or carry fifty-one to seventy-four pounds.

Reynolds began working as a shipping and receiving clerk for AmeriSource in December 1996. He resigned from AmeriSource because he had trouble standing in limited positions all day and working ten- to eleven-hour shifts. He was able to lift up to forty pounds while working for AmeriSource. Although Reynolds' affidavit submitted in response to Phillips' summary judgment motion states that his job at AmeriSource was nothing like his job at Phillips, he stated in his deposition that his job at AmeriSource was "basically the same thing that I did at Phillips & Temro but there wasn't any forklift driving." (Supp. Appx., p. 11.)

The district court found the record conclusively establishes that Reynolds could not have performed his job at Phillips at the end of the twelve weeks of leave provided by the FMLA.[2] The district court did not reach the issues of whether Reynolds'

___

[2]In reaching this conclusion, the district court acknowledged that Reynolds may have been entitled to intermittent leave due to the restriction on his work day of four to eight hours. See 29 C.F.R. § 825.203(a) and (c); 29 C.F.R. § 825.205(a). However, the district court found the right to intermittent leave was immaterial because Reynolds was unable to perform essential functions of his job even with reduced hours.

As an alternative basis for granting summary judgment to Phillips, the district court cited our decision in Dush v. Appleton Elec. Co., 124 F.3d 957 (8th Cir. 1997) and concluded that even if a factual dispute existed as to whether Reynolds could have

condition was a "serious health condition" under the FMLA or whether Reynolds gave proper notice of his need for leave under the FMLA.

## II.  DECISION

We review a grant of summary judgment de novo.  The question before the district court, and this Court on appeal, is whether the record, when viewed in the light most favorable to the non-moving party, shows that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).

The FMLA entitles eligible employees to take leave from work when they  must be absent from work for medical reasons.  29 U.S.C. § 2612(a)(1).  The FMLA allows an eligible employee[3] to take up to twelve weeks of leave during any twelve-month period for certain family or medical reasons including "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).  The FMLA further provides that, upon return from FMLA leave, an employee shall be restored to the position of employment he held when the leave began or to an equivalent position with equivalent benefits, pay, and other terms and conditions of employment.  29 U.S.C. § 2614(a).  FMLA regulations provide that "[i]f the employee is unable to perform an essential function of the position because of a physical or mental condition, including the continuation of a serious health condition, the employee has no right to restoration to another position under the FMLA.

---

performed his job at Phillips after an FMLA leave, Reynolds' receipt of $20,000 in economic loss benefits from Western National establishes that Phillips is entitled to summary judgment.  As discussed in note 4, *infra*, we do not decide this issue.

[3]An employee is eligible for the leave if the employee has at least 1250 hours of service during the twelve months prior to commencement of leave.  29 U.S.C. § 2611(2)(A).

However, the employer's obligations may be governed by the Americans with Disabilities Act (ADA)." 29 C.F.R. § 825.214(b).

Assuming Reynolds had a "serious health condition" within the meaning of the FMLA, an issue we do not decide, the record does not show a genuine issue of material fact on the issue of whether Reynolds would have been able to perform the essential functions of his position with Phillips. Reynolds described his duties at Phillips as including lifting up to 100 pounds, lifting substantial weight above his head, climbing and remaining on his feet all day. Until at least June 1996, Dr. Palashewski consistently recommended work restrictions for Reynolds, including limiting his lifting to twenty-five pounds; prohibiting climbing; and restricting his lifting, standing, walking, bending, and twisting to fifty percent of his work day. Reynolds consistently applied for manual labor jobs during 1996, but did not obtain such employment until late 1996 when he began employment as a shipping and receiving clerk with AmeriSource. However, nearly one year after his accident Reynolds was unable to physically perform his job at AmeriSource and resigned in December 1996. His job at AmeriSource included working ten to eleven hour shifts, lifting up to forty pounds and standing all day.

Although Reynolds now asserts that he was ready, willing and able to return to his job at Phillips on January 29, 1996, the record does not support his assertion. Reynolds' current disagreement with Dr. Palashewski's recommendations does not create a genuine issue of material fact regarding Reynolds' ability to perform the essential functions of his job in 1996. He sought and obtained economic loss benefits from Western National in the amount of $20,000 based in large part on Dr. Palashewski's submissions on behalf of Reynolds recommending certain work restrictions due to injuries Reynolds suffered in the motor vehicle accident on January 8, 1996. The forms Dr. Palashewski submitted on Reynolds' behalf, dated March 12, 1996 and March 3, 1997, specifically state that Reynolds had a continuing disability and that he was unable to perform his normal occupation as a result of the injuries he received in the January 8, 1996 accident. Dr. Palashewski wrote on the March 3, 1997

form that "[p]atient has been unable to perform his regular (previous) work duties. As of 3 weeks ago he started in light restriction job." As of March 3, 1997, Dr. Palashewski's work restrictions for Reynolds continued to include six- to eight-hour shifts, twenty-five pounds maximum lifting, and limited flexing and extension. At the time he was applying for benefits in 1996, Reynolds did not submit any information to Western National to contradict Dr. Palashewski's work restrictions. After having carefully reviewed the record herein, we conclude summary judgment was properly entered in favor of Phillips because the record establishes that Reynolds could not have performed the essential functions of his job at the end of twelve weeks of leave.[4]

In light of our disposition of Reynolds' FMLA claim for reinstatement as set forth above, we need not reach Phillips' arguments that Reynolds' injuries did not amount to a serious health condition under the FMLA or that Reynolds failed to give proper notice of his need for FMLA leave.

The district court's judgment in favor of Phillips is affirmed.

---

[4]Reynolds contends the district court's reliance on our opinion in Dush v. Appleton Elec. Co., 124 F.3d 957 (8th Cir. 1997) as an alternative basis for granting summary judgment in favor of Phillips is negated by the Supreme Court's recent decision in Cleveland v. Policy Management Systems, Corp., ___ U.S. ___, 119 S.Ct. 1597 (1999). Phillips contends Cleveland does not apply in this case. The Supreme Court altered the summary judgment standard set forth in Dush involving ADA claims wherein the ADA claimant made prior representations to the Social Security Administration ("SSA") to the effect that she is unable to work due to a disability. See Moore v. Payless Shoe Source, Inc., 187 F.3d 845 (8th Cir. 1999) (reconsidering a prior decision relying on the summary judgment standard set forth in Dush in light of the Supreme Court's decision in Cleveland). Based upon our conclusion that the record establishes Reynolds could not have performed the essential functions of his job after twelve weeks of leave, we find it unnecessary to decide whether Cleveland applies in this FMLA case where the FMLA claimant made prior representations, rather than sworn statements, that he was unable to perform his normal occupation in order to obtain economic loss benefits from a no-fault insurance carrier.

A true copy.

ATTEST:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.