**Dean E. CONRAD, Plaintiff,**

v.

**EATON CORPORATION, Defendant.**

**No. C02–4111–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

Feb. 17, 2004.

David A. Scott, Cornwall Avery Bjornstad Scott, Spencer, IA, for Plaintiff.

G. Ross Bridgman, Mark A Knueve, Vorys Sater Seymour & Pease, Columbus, OH, Maurice B Nieland, Rebecca A. Nelson, Rawlings, Neiland, Probasco, Killinger, Ellwanger, Jacobs, et al., Sioux City, IA, for Defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I.   INTRODUCTION ...............................................................990
     A.   Procedural Background .................................................990
     B.   Factual Background ....................................................990
          1.   Pertinent employment history ...................................990
          2.   Medical history ................................................993

II.  LEGAL ANALYSIS ...........................................................994
     A.   Standards for Summary Judgment ....................................994
     B.   Conrad's FMLA Claim ...............................................996
          1.   Arguments of the parties .......................................996
          2.   Did Conrad give acceptable notice of his need for leave under the
               FMLA? ........................................................997
          3.   Did Conrad have a "serious health condition" under the FMLA? ....1000

III. CONCLUSION ..............................................................1003

### I. INTRODUCTION

#### A. Procedural Background

On November 1, 2002, plaintiff Dean E. Conrad ("Conrad") filed a complaint in the Iowa District Court for Clay County, against his former employer, defendant Eaton Corporation ("Eaton"), seeking damages resulting from his termination in September, 2001. Conrad's complaint alleged four causes of action: (1) violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA"); (2) violation of the Iowa Civil Rights Act, Iowa Code § 216.1, *et seq.* ("ICRA"); (3) violation of the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA"); and (4) violation of Iowa public policy. On November 22, 2002, defendant Eaton effected removal of this action to this court. (Doc. No. 1). Also on November 22, 2002, defendant Eaton filed an answer with this court denying all of Conrad's claims and asserting several affirmative defenses. (Doc. No. 2).

On October 30, 2003, defendant Eaton filed a Motion for Summary Judgment as to all of Conrad's claims. (Doc. No.17). On December 19, 2003, plaintiff Conrad filed a resistance to the defendant's motion, as well as a statement of additional material facts. (Doc. No. 20). On December 30, 2003, the defendant filed a reply to the plaintiff's resistance as well as a response to the plaintiff's statement of additional material facts. (Doc. No. 21). On January 20, 2004, the parties filed a Stipulation of Dismissal, which dismissed without prejudice counts I, II, and IV of the complaint. (Doc. No. 22). Only the propriety of summary judgment as to count III, the plaintiff's claim under the FMLA, remains.

In this matter plaintiff Conrad is represented by David A. Scott of Cornwall Avery Bjornstad and Scott, in Spencer, Iowa. Defendant Eaton Corporation is represented by G. Ross Bridgman and Mark A. Knueve of Vorys, Sater, Seymour & Pease LLP in Columbus, Ohio, and Maurice B. Nieland and Rebecca A. Nelson of Rawlings, Neiland, Probasco, Killinger, Ellwanger, Jacobs & Mohrhauser, L.L.P., in Sioux City, Iowa. A jury trial on this matter is currently scheduled for March 29, 2004.

#### B. Factual Background
#### 1. Pertinent employment history

Conrad was hired by Eaton Corporation to work at its Spencer, Iowa plant on February 1, 1994. Conrad admits that he was aware, from the time of his hire, of Eaton's policy against unlawful discrimination as well as it's policy prohibiting violence or threats of violence, in the workplace. Conrad worked in a variety of positions at Eaton. At some time prior to July 2001, Conrad retained an attorney in order to pursue a workers

compensation claim—Conrad was having some pain in his elbows, and that pain allegedly originated while he was employed at Eaton. On July 27, 2001, an incident occurred. On this date, Conrad was working as a PVH testor at the Spencer, Iowa, plant. A PVH unit is described by the parties as a metal pump that weighs approximately 30 pounds. Testing required the placement of PVH units from a cart onto the table the tester is working at. Conrad's supervisor at the time was Al Sievertson, and his team leader was Scott Johnson. At some point on July 27, 2001, Scott Johnson was attracted to plaintiff's work station by a series of loud noises. At this point the plaintiff's and defendant's account of the incident diverge. The plaintiff recalls lifting the PVH units from the cart, over his head, and bringing them down upon his work table—and that ultimately one of the units fell off of his work table to the floor. Plaintiff contends that the slamming of the units onto the table was done out of frustration because all of the units he was testing that day were failing. Mr. Johnson's account of the event is quite different. Johnson contends that he was attracted to plaintiff's work station because plaintiff was banging loudly and screaming. Johnson also claims that as he approached Conrad to confront him on his actions, Conrad lifted a 30 pound PVH unit over his head in a threatening manner. According to Johnson, Conrad slammed the unit onto the table, and that unit then fell to the ground. Conrad admits (1) that he had no legitimate reason for lifting the pump over his head, and (2) that the pump was slippery and could have slipped out of his hands and resulted in a safety hazard. At this point the parties agree that Mr. Sievertson approached Conrad, grabbed his arm, and took him into Scott Swier's [1] office. Also

present was Mr. Jim Soukup, the Manufacturing Manager. Due to his inappropriate behavior Conrad was asked to submit to a voluntary drug and alcohol test—which plaintiff did submit to. As discipline for his inappropriate behavior, Conrad was suspended for two days without pay pending the results of that test. Conrad was advised by Mr. Swier that he should immediately leave the building and not go back to work—Conrad explicitly disregarded this instruction and went back to his work station. Eventually, after a second confrontation with Mr. Sievertson, Conrad left the plant without further incident. Ultimately, the drug and alcohol tests came back negative.

Conrad returned to work on August 1, 2001. Immediately upon his arrival, Conrad met with Jim Soukup, Scott Swier and Scott Johnson to discuss his behavior on July 27, 2001. At this meeting Mr. Swier informed the plaintiff that the act of putting the PVH unit over his head could be perceived as threatening, and could be a violation of Eaton's policy prohibiting violent conduct. Conrad was also informed that his disregard of Swier's order not to go back to work was insubordination. Mr. Swier informed plaintiff that further incidents of insubordination and loss of temper would result in Conrad's termination. Conrad was presented with an Employee Counseling notice to sign which detailed his violations of company policy, as well as what was discussed at the meeting. Conrad initially did not want to sign the notice as he did not believe he had acted in a threatening manner. Swier informed plaintiff that his failure to sign the document could constitute grounds for termination. After some debate, Conrad signed the document. Conrad then reported to his supervisor, Mr. Sieverston. Eaton contends that Conrad then got into a heat-

---

1. Mr. Swier is the Human Resources Manager at Eaton Corporation.

ed argument with Mr. Sieverston regarding his behavior on July 27, 2001. Conrad disputes this and asserts only that they had a discussion, but claims they did not argue. In any case, Conrad's behavioral volatility continued and he was sent home again on that very afternoon. When he arrived home Conrad contacted a psychiatrist, Dr. Paul Anderson of Spencer Psychiatry, through the Eaton Employee Assistance Program. Dr. Anderson met with Conrad that afternoon. At that time, Dr. Anderson wrote the following note on a prescription form for Conrad to deliver to Eaton: "No work until further notice!" Appendix to Defendant's Motion for Summary Judgment ("Def.'s App."), Doc. No. 17–3, at pg. 24.

On August 3, 2001, Scott Swier sent Conrad a letter which stated, in part:

Based on the above circumstances, a decision regarding your future employment at Eaton Corporation will be postponed for 30 days, (or at such time as you are released to work, if less than 30 days). This will allow you the resources of the Eaton Benefit plan, including EAP, health and disability insurance to hopefully resolve the issues that have resulted in your inappropriate workplace behavior. You are encouraged to speak with our Occupational Health Nurse, Linda Casey, if you have questions regarding these benefits. (264–3292) The thirty day period will also allow you the opportunity to provide any additional relevant information pertaining to your continued employment, or conditions surrounding your continued employment.

As we discussed, I have serious concerns regarding your emotional stability and the potential you have displayed for in-

tentionally injuring a co-worker, yourself, or Eaton property. Your ability to address these concerns in the next thirty days, and to provide assurances to Eaton Corporation that these concerns have been addressed, will be paramount in allowing you to return to work.

Def.'s App. at pg. 18–19. After receiving this letter, Conrad admittedly never contacted anyone at Eaton regarding his leave, though he did continue seeing Dr. Anderson.

A letter was subsequently sent to Conrad by Linda Casey, Eaton's Occupational Health Nurse, advising the plaintiff that Dr. Anderson had informed Eaton that Conrad's present medical condition could be work related—and as such, plaintiff had a right to file for workers compensation if he had sustained a work related injury. Ms. Casey's letter was accompanied by workers compensation forms to be filled out by the plaintiff. Ms. Casey's letter was undated, but was postmarked August 5, 2001. Conrad responded to the letter through his attorney, David A. Scott. Mr. Scott wrote Mr. Swier a letter, dated August 8, 2001, which advised Mr. Swier and Eaton Corporation that Conrad wished to communicate with Eaton only through his attorney. Further, the letter stated that Conrad was eligible for Temporary Total Disability benefits under Iowa Workers' Compensation law, and requested that such benefits be paid directly to Conrad at his home address. Enclosed with Mr. Scott's letter were the completed forms that Ms. Casey requested to be filled-out.[2]

On August 13, 2001, Mr. Swier sent Conrad an additional letter advising him that his current medical disability leave, which began on August 2, 2001, was being

---

**2.** Under the space where the employee gives a statement of what occurred, the following is typed: "Employee suffers from major depression caused by work place stress of greater magnitude than the day to day mental stresses experienced by other workers employed in the same or similar jobs, regardless of their employer." Def.'s App. at pg. 26.

considered under "the Eaton disability programs as well as the 1993 Federal 'FAMILY MEDICAL LEAVE ACT'." Def.'s App. at pg. 29. Further, the letter urges Conrad to "review the qualifying events and entitlements (12 week protected leave) associated with the current federal program which I have attached for your review." Def.'s App. at pg. 29. The letter concludes by advising the plaintiff that if he has any questions regarding either the Eaton Disability program, or the FMLA program, that he can contact Mr. Swier directly.

On August 24, 2001, Mr. Swier sent a letter to Conrad's attorney, Mr. Scott, stating that it was his intention to terminate Conrad's employment effective September 4, 2001, if the concerns set forth in his letter dated August 3, 2001, had not been addressed. Mr. Swier states that as of the date of the letter he had not received any information regarding his concerns from either Mr. Scott, Dr. Anderson or Mr. Conrad. Further, Mr. Swier states that as Conrad elected to file a workers compensation claim, Mr. Swier is requesting Conrad sign a release of medical records and that a copy of Dr. Anderson's records and opinions be forwarded to Eaton Corporation. Conrad executed such a release.

On August 31, 2001, Mr. Scott sent a letter to Mr. Swier to confirm that Mr. Swier had received Dr. Anderson's notes. In this letter Mr. Scott states: "Dr. Anderson is of the opinion that Mr. Conrad's condition is work related. Please let me know if you need any additional information before commencing payment of healing period benefits." Plf.'s App. at pg. 27.

On September 4, 2001, Mr. Swier sent a letter to Conrad informing him that while Eaton had received Dr. Anderson's office notes, no further information had been revealed and that considering all of the facts and circumstances, Conrad's employment was terminated effective September 4, 2001. This litigation followed.

### 2. Medical history

Conrad first met with a psychiatrist, Dr. Paul Anderson, on August 1, 2001—the day that Conrad was sent home for the second time by Eaton. According to Dr. Anderson's assistant, Conrad called his office hysterical and upset—therefore, Conrad was seen that afternoon on an "emergency" basis. Def.'s App. at pg. 38. At the time Dr. Anderson finally spoke to Conrad, he was agitated and hysterical. Dr. Anderson's evaluation of Conrad resulted in a preliminary diagnosis of "Major Depression, single episode." Def.'s App. at pg. 39. Dr. Anderson offered to hospitalize Conrad, but Conrad declined. Dr. Anderson opines that at this time Conrad would probably be limited in his daily functions: "I didn't figure he would be able to do too much; although, I would have encouraged him to get out and mow the grass, do something outside, do something." Def.'s App. at pg. 40. Dr. Anderson's notes from that visit indicate that Conrad had been having out of the blue crying spells for the past couple of years and he had been unable to sleep or eat for the last few days. At this time, Dr. Anderson prescribed Conrad an anti-depressant.

Dr. Anderson's notes from an August 3, 2001, visit with Conrad indicate that "[w]hile we do feel that he is disabled, we do feel that it is work related stress and probably not a disability thing." Plf.'s App. at pg. 8. Dr. Anderson gave the following explanation for this notation:

Q: . . . the next sentence in your notes read—reads, "While we do feel that he is disabled, we do feel that it is work-related stress and probably not a dis-

ability thing." What did you mean by that sentence?

A: We—Didn't—in my mind, I didn't feel that he was—not necessarily shouldn't apply for disability but that he should try to work through this because it was work-related stress and it should be somehow worked through, where he's not disabled.

Q: Okay. Why did you think that it was not a disability thing?

A: Well, I didn't—after evaluating Dean, talking to Dean, Dean wanted to work. *Dean is—didn't seem to me like he was unable to work.* Okay?

Q: Has he ever seemed to you as if he's unable to work?

A: No. He's working.

Q: *So, in your opinion he's not disabled?*

A: *Right.*

Def.'s App. at pg. 41 (emphasis added). At this visit, Dr. Anderson also notes that Conrad is still tearful, upset, and very depressed. Dr. Anderson opined that during the period of August 1st through August 3rd the plaintiff was not incapacitated. Def.'s App. at 41.

On an August 8, 2001, visit, Dr. Anderson prescribed Conrad an additional medication—Zyprexa—to help with sleeplessness and anxiety.

Notes from an August 15, 2001, visit described Conrad as "a bit paranoid" and "still not sleeping well." Plf.'s App. at pg. 9. In his August 22, 2001, notes Dr. Anderson stated that Conrad seemed "brighter," though he was still significantly depressed. Plf.'s App. at 9. Dr. Anderson opined that by the August 22, 2001, visit Conrad was certainly not ready to go back to work at Eaton Corporation, though he felt that Conrad was mentally ready to go to work for another employer. Similarly, after a September 17, 2001, visit Dr. Anderson testified that Conrad was still not ready to go back to work at Eaton

Corporation, though Dr. Anderson encouraged Conrad to "get out" and do household chores. Appendix to Plaintiff's Resistance to Defendant's Motion for Summary Judgment, Doc. No. 20–4, at pg. 4. Dr. Anderson continued to see Conrad on a regular basis through approximately May 2003—during which time Dr. Anderson's notes indicate a steady, though slow, improvement.

Dr. Anderson also testified to the effect that to the best of his recollection he had never filled out a FMLA form for plaintiff Conrad. Def.'s App. at pg. 38.

## II. LEGAL ANALYSIS

### A. Standards for Summary Judgment

Summary judgment is appropriate when the court after viewing all of the facts, and inferences drawn from those facts, in the light most favorable to the non-moving party, and giving that party the benefit of all reasonable inferences that can be drawn from the facts, concludes there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *See Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 706 (8th Cir.2002); *P.H. v. Sch. Dist. of Kansas City, Mo.*, 265 F.3d 653, 658 (8th Cir.2001) (nonmoving party, "is entitled to all reasonable inferences-those that can be drawn from the evidence without resort to speculation.") (quoting *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1110 (8th Cir. 2001)) (internal quotations omitted); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The court's function at the summary judgment stage of the proceedings is not "to weigh evidence in the summary judgment record to determine the truth of any factual issue; we merely determine whether there is evidence creating a genuine issue for trial."

*Bell v. Conopco, Inc.,* 186 F.3d 1099, 1101 (8th Cir.1999) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

According to Rule 56(e), once the moving party files a properly supported motion for summary judgment, the burden shifts to the nonmoving party to point out genuine issues of material fact that would preclude judgment as a matter of law for the moving party. *See* FED. R. CIV. P. 56(e); *Bennett v. Dr Pepper/Seven Up, Inc.,* 295 F.3d 805, 808–09 (8th Cir.2002); *Naucke v. City of Park Hills,* 284 F.3d 923, 927 (8th Cir.2002) (explaining, "a nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial.") (citing *F.D.I.C. v. Bell,* 106 F.3d 258, 263 (8th Cir.1997)), quoting *Rolscreen Co. v. Pella Prods. of St. Louis, Inc.,* 64 F.3d 1202, 1211 (8th Cir.1995); *Bailey v. U.S. Postal Serv.,* 208 F.3d 652, 654 (8th Cir. 2000) (nonmoving party "may not rest upon 'mere allegations or denials' contained in its pleadings, but must, by sworn affidavits and other evidence, 'set forth specific facts showing that there is a genuine issue for trial.'") (quoting FED. R. CIV. P. 56(e)); *Mathews v. Trilogy Communications, Inc.,* 143 F.3d 1160, 1164 (8th Cir.1998) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, the party opposing summary judgment "must make a sufficient showing on every essential element of its claim on which it bears the burden of proof." *P.H.,* 265 F.3d at 658 (quoting *Buettner v. Arch Coal Sales Co.,* 216 F.3d 707, 718 (8th Cir.2000)), *cert. denied,* 531 U.S. 1077, 121 S.Ct. 773, 148 L.Ed.2d 672 (2001). The consequence of a nonmoving party's failure of proof concerning an essential element of the case "renders all other facts immaterial," and in such a case, no genuine issue of fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The court looks to the substantive law to determine if an element is "essential" to the underlying case. *Id.* Therefore, the movant is entitled to summary judgment where the factual dispute does not affect the outcome of the case under the governing law. *See Jackson v. Arkansas Dept. of Educ., Vocational & Tech. Educ. Div.,* 272 F.3d 1020, 1025 (8th Cir.2001), *cert. denied,* 536 U.S. 908, 122 S.Ct. 2366, 153 L.Ed.2d 186 (2002) (citing *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505, 91 L.Ed.2d 202).

The Eighth Circuit Court of Appeals has cautioned that "summary judgment should seldom be used in employment discrimination cases." *See Crawford v. Runyon,* 37 F.3d 1338, 1341 (8th Cir.1994). This exceptional deference shown the nonmoving party is warranted, according to the Eighth Circuit Court of Appeals, "Because discrimination cases often turn on inferences rather than on direct evidence ..." *E.E.O.C. v. Woodbridge Corp.,* 263 F.3d 812, 814 (8th Cir.2001) (en banc) (citing *Crawford,* 37 F.3d at 1341); *Conopco, Inc.,* 186 F.3d at 1101 (citing *Snow v. Ridgeview Med. Ctr.,* 128 F.3d 1201, 1205 (8th Cir. 1997)), and because "intent" is generally a central issue in employment discrimination cases. *Christopher v. Adam's Mark Hotels,* 137 F.3d 1069, 1071 (8th Cir.1998) (citing *Gill v. Reorganized Sch. Dist. R–6, Festus, Mo.,* 32 F.3d 376, 378 (8th Cir. 1994)). Nonetheless, this exercise of judicial prudence "cannot and should not be construed to exempt" from summary judgment, employment discrimination cases involving intent. *Christopher,* 137 F.3d at 1071 (quoting *Krenik v. County of Le Sueur,* 47 F.3d 953, 959 (8th Cir.1995)). The fact remains that "the ultimate burden of persuading the trier of fact that the defendants intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 120 S.Ct. 2097,

147 L.Ed.2d 105 (2000). Furthermore, "where the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate." *Aucutt v. Six Flags Over Mid–America, Inc.,* 85 F.3d 1311, 1315 (8th Cir.1996) (quoting *Crain v. Board of Police Comm'rs,* 920 F.2d 1402, 1405–06 (8th Cir.1990)). The court will apply these standards to Eaton's Motion for Summary Judgment, addressing each of the disputed issues in turn.

### B. Conrad's FMLA Claim

#### 1. Arguments of the parties

Eaton argues that there are two grounds upon which summary judgment of Conrad's FMLA claim is appropriate. First, Eaton contends that the FMLA would only be applicable under these facts if the plaintiff suffered from a "serious health condition"—which is defined by the regulations governing the FMLA as "a period of incapacity of more than three days together with subsequent treatments or related periods of incapacity." *Martyszenko v. Safeway, Inc.,* 120 F.3d 120, 122 (8th Cir.1997) (citing 29 C.F.R. § 825.114(a)). Eaton asserts that the plaintiff has been unable to shoulder his burden of proving that his depression resulted in his incapacitation—especially because the plaintiff's expert witness and treating psychiatrist Dr. Anderson testified that Conrad was not incapacitated. Therefore, there is no genuine issue of material fact as to whether the plaintiff suffered from a "serious health condition." Alternatively, even if a genuine issue of material fact exists as to whether the plaintiff's depression constituted a "serious health condition," the plaintiff never requested leave under the FMLA, nor submitted the necessary medical certification—therefore, entitling Eaton to summary judgment.

Conrad contends that "incapacity" refers only to his inability to perform the functions of his job at Eaton Corporation—under which definition the plaintiff's major depression episode clearly prevented him from performing the duties required by his position. Further, plaintiff argues that the fact that he was able to perform rudimentary household chores does not preclude a finding that his depression was a "serious health condition." Further, with regard to Dr. Anderson's testimony, Conrad contends that Dr. Anderson's use of the word "incapacitated" in his deposition was not intended to mean the same thing as "incapacity" under the FMLA—nor was Dr. Anderson equipped with a legal definition of "incapacity" as used in conjunction with the FMLA when he gave his deposition. Finally, Conrad argues that he was not required to request FMLA leave because Eaton was obviously already aware of his medical condition—such knowledge being evidenced by: (1) first-hand observation of his bizarre behavior; (2) the note Eaton received from Dr. Anderson stating that the plaintiff was not to be working; and (3) the recognition by Eaton in its letter dated August 13, 2001, that plaintiff was on medical disability leave and that such leave was considered under the FMLA. For these reasons the plaintiff contends that summary judgment is improper at this juncture.

Eaton's reply reiterates, and elaborates on, its previous arguments. First, Eaton contends that Conrad's definition of "incapacity" is plainly wrong, and that the appropriate definition is "the inability to work, attend school or perform regular daily activities due to the serious health condition." *Joslin v. Rockwell Int'l Corp.,* 8 F.Supp.2d 1158, 1160 (N.D.Iowa 1998). Under the appropriate definition, Eaton asserts that Conrad was plainly not incapacitated as he was able to perform household work. Further, Eaton points to Dr. Anderson's testimony that Conrad was able to perform the functions of his job, and to work—just that it would not be in

Conrad's best interest to return to work *at Eaton.* As "Conrad's alleged health condition did not prevent him from working, attending school, or performing other regular daily tasks," Eaton claims Conrad has failed to meet his burden of establishing his incapacitation, and Eaton is entitled to summary judgment on the plaintiff's FMLA claim. Reply Memorandum in Support of Defendant's Motion for Summary Judgment, Doc. No. 21–1, at pg. 3. Next, Eaton repeats its argument that it is entitled to summary judgment because the plaintiff never presented it with the required notice for taking leave under the FMLA. Eaton criticizes the plaintiff's reliance on the Seventh Circuit case of *Byrne v. Avon Products,* 328 F.3d 379 (7th Cir. 2003). Eaton asserts that *Byrne* is inapplicable to this case as there is no evidence that Conrad was incapable of giving the requested information to Eaton, and unlike the *Byrne* plaintiff, Conrad is represented by counsel who could have assisted him in getting the requisite information to Eaton. Eaton contends that it is entitled to summary judgment on this ground because, despite being represented by counsel, Conrad never requested FMLA leave, never submitted the necessary medical certification, and never requested leave in excess of the thirty days that Eaton provided him.

### 2. Did Conrad give acceptable notice of his need for leave under the FMLA?

The FMLA provides for up to twelve workweeks per year of medical leave to covered employees under various circumstances—one such circumstance being where the employee has a "serious health condition." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." *Id.* § 2611(11). The FMLA also protects the employees' right to be placed in the

same or an equivalent position upon return from leave. *Id.* § 2614(a).

Where the need for FMLA leave "is foreseeable" the employee must provide his or her employer with 30 days notice, or as much notice as is practicable, of their intention to use FMLA leave. 29 U.S.C. § 2612(e)(2). Where there is a "lack of knowledge of approximately when the leave will be required to begin, a change in circumstances, or a medical emergency," 30–days advanced notice is not required. 29 C.F.R. § 825.302(a). Rather, in these unpredictable situations, notice is required "as soon as practicable," meaning "as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." 29 C.F.R. § 825.302(b). This "ordinarily . . . mean[s] at least verbal notification to the employer within one or two business days of when the need for leave becomes known to the employee." *Id.* Acceptable means for an employee to communicate notice include: "in person, by telephone, telegraph, facsimile ('fax') machine or other electronic means." 29 C.F.R. § 825.303(b). "An employee need not invoke the FMLA by name in order to put an employer on notice that the Act may have relevance to the employee's absence from work." *Thorson v. Gemini, Inc.,* 205 F.3d 370, 381 (8th Cir.), *cert. denied,* 531 U.S. 871, 121 S.Ct. 172, 148 L.Ed.2d 117 (2000); *see* 29 C.F.R. § 825.303(b) ("The employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed."). "Under the FMLA, the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave." *Id.* (citing *Browning v. Liberty Mut. Ins. Co.,* 178 F.3d 1043, 1049 (8th Cir.1999)).

In this instance plaintiff Conrad relies on the case of *Byrne v. Avon Products, Inc.*, 328 F.3d 379 (7th Cir.2003) for the proposition that Conrad's unusual behavior on July 27, 2001 and August 1, 2001, provided Eaton with sufficient notice of his need for FMLA leave. Eaton contends that *Byrne* is not applicable to this matter because, unlike the plaintiff in *Byrne*, Conrad was able to provide them with notice, and Conrad was represented by counsel at the time he claims to have needed FMLA leave. The thrust of the *Byrne* decision regarding notice and the FMLA is that a qualifying employee's unusual workplace behavior can, itself, constitute notice to the employer that FMLA leave could be necessary. *Byrne*, 328 F.3d at 381–82. However, this holding appears to allow notice of a kind outside of the scope contemplated in the governing regulations. *See* 29 C.F.R. § 825.303(b) (stating that notice of need for FMLA leave can be provided "in person, by telephone, telegraph, facsimile ('fax') machine or other electronic means."); *Beal v. Rubbermaid Commercial Prods., Inc.*, 972 F.Supp. 1216, 1227 (S.D.Iowa 1997) ("The FMLA requires merely that if 'the leave is not foreseeable,' an employee must give at least verbal notification to the employer within one or two business days from when the need for leave becomes known to the employee.") (quoting 29 C.F.R. § 825.303). Fortunately, the court need not resolve this apparent discrepancy at this time. From the facts it is clear that Conrad provided notice as contemplated by the FMLA and governing regulations where the need for leave is unforeseen. On the very day that Conrad was sent home—August 1, 2001—there is no dispute that he provided Eaton a note from his psychiatrist, Dr. Anderson, which stated "No work until further notice!" Plf.'s App. at pg. 7. This, in combination with Eaton's knowledge of Conrad's behavioral volatility the past week, undoubtedly apprised Eaton of Conrad's illness. *Com-*

*pare Thorson*, 205 F.3d at 381 (finding that an employee who was absent for more than three days with notes from her physician, written on two different occasions within that period of absence, indicating that she was not to work, met the notice requirements of the FMLA) *with Carter v. Ford Motor Co.*, 121 F.3d 1146, 1148–49 (8th Cir.1997) (holding that where employee's wife called employer and told them she was sick and her husband-employee would not be in to work due to family problems, notice was inadequate to apprise employer of need for FMLA leave). Additionally, Mr. Swier's letter to Conrad on August 13, 2001, essentially admits that Eaton was aware of Conrad's potential need for FMLA leave when Mr. Swier stated that Conrad's current leave was being considered under both "the Eaton disability programs as well as the 1993 Federal 'FAMILY MEDICAL LEAVE ACT'." Def.'s App. at pg. 29.

■ However, the inquiry does not end here. Eaton contends that even if it was aware of Conrad's potential need for leave under the FMLA, that it is still entitled to summary judgment as Conrad failed to communicate his need for leave beyond the 30–days Eaton provided him, and failed to present proper medical certification. Once Eaton was apprised of Conrad's potential need for FMLA leave, "[Eaton] became obligated either to count [Conrad's] absence as FMLA leave under the 'serious health condition' provision or to follow the procedures set out in the statute and regulations designed to prevent employee abuse of the Act." *Thorson*, 205 F.3d at 381. Therefore, Eaton had the option of initiating the FMLA's medical certification process. *See id.* The regulations allow employers to require that employees submit medical certification of the need for medical leave. 29 C.F.R. § 825.305(a). Such certification is issued

by the employee's health care provider and provides information such as the diagnosis, onset date, and duration of the condition. *Id.* Additionally, "employers may require that employees submit recertification when an employee requests an extension of leave, provided that such recertification is not required prior to 30 days after the employer's previous receipt of medical certification." *Junker v. Amana Co., L.P.,* 240 F.Supp.2d 894, 900 (N.D.Iowa 2003) (citing 29 C.F.R. § 825.308(c)(1)). In *all* instances "[t]he responsibility to request FMLA certification is the employer's." *Thorson,* 205 F.3d at 381–82. As required by the regulations, notice of a requirement for medical certification must be written notice. *See* 29 C.F.R. § 825.305(a) ("An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice whenever required by § 825.301."). This written notice must detail the "specific expectations and obligations of the employee and explain[ ] any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1). The court now turns to the record to determine if a genuine issue of material fact exists as to Eaton's request for medical certification.

Mr. Swier's letter of August 13, 2001, informing Conrad that his leave was being considered under the Eaton Disability program as well as the FMLA, states that enclosed with the letter was summary of the qualifying events and requirements for obtaining FMLA leave. The FMLA summary states Eaton's policy as follows:

> Advance notice and medical certification: The employee is required to provide advance leave notice and medical certification. Taking of leave may be denied if requirements are not met.
>   • The employee ordinarily must provide 30 days advance notice when the leave is "foreseeable".
>   • *Medical certification will be required to support a request to leave because of "serious health condition",* and may require second or third opinions (at the company's expense) and a fitness for duty report to return to work. Confidentially will be maintained on all medical records that are placed in an employees personal medical file.

Plf.'s App. at pg. 28 (emphasis added). However, there is some dispute over whether the FMLA summary was in fact enclosed with the August 13, 2001, letter. The plaintiff's wife, Colleen Conrad, indicated that she remembered receiving the August 13, 2001, letter, but did not think that the FMLA summary was enclosed. Plf.'s App. at pg. 25. Plaintiff, and his attorney, were made aware from Mr. Swier's August 24, 2001, letter that failure to provide assurances of the plaintiff's mental stability, or further detail about the plaintiff's condition which prevented him from working, would result in Conrad's termination on September 4, 2001. Eaton subsequently received Dr. Anderson's office notes, purportedly in response to Mr. Swier's request that Conrad execute a medical release in conjunction with his workers compensation claim.

After looking at all of the facts in the light most favorable to the plaintiff, the court cannot conclude that no genuine issue of material fact exists as to whether Eaton specifically requested medical certification from plaintiff Conrad. The only record evidence of a need for such medical certification was the FMLA summary purportedly attached to the August 13, 2001, letter that Mr. Swier sent plaintiff Conrad. Conrad's wife disputes that this summary was even enclosed with the letter. Further, even assuming that the FMLA summary was enclosed, genuine issues of material fact exist as to whether it was sufficient to rise to the level of a

specific request by Eaton that Conrad fill out a medical certification. It is true that the August 13, 2001, letter stated that Conrad could contact Mr. Swier regarding any questions he had as to his entitlement for leave under the Eaton disability program or the FMLA program. However, as stated above, once the employee has notified his employer of a potential need for FMLA leave the onus shifts to the employer to specifically request, in writing, that the employee fill out a medical certification—it would be in opposition to the FMLA to place the burden on plaintiff Conrad at this point to contact his employer regarding a medical certification. *Accord Browning v. Liberty Mut. Ins. Co.,* 178 F.3d 1043, 1049 (8th Cir.), *cert. denied,* 528 U.S. 1050, 120 S.Ct. 588, 145 L.Ed.2d 489 (1999) ("Under the FMLA, the employer's duties are triggered when the employee provides enough information to put the employer on notice that the employee may be in need of FMLA leave."). There is clearly a genuine issue of material fact as to whether Eaton actually requested Conrad to submit a medical certification.

### 3. Did Conrad have a "serious health condition" under the FMLA?

As summary judgment is not appropriate on the timeliness and adequacy of Conrad's notice to Eaton of his potential need for FMLA leave, the court now turns to the second ground upon which Eaton claims it is entitled to summary judgment—namely, that Conrad cannot establish that he has a "serious health condition" as defined by the FMLA.

■ A "serious health condition" is defined by the FMLA as follows:

The term "serious health condition" means an illness, injury, impairment, or physical or mental condition that involves—

(A) inpatient care in a hospital, hospice, or residential medical care facility; or

(B) *continuing treatment by a health care provider.*

*Id.* § 2611(11) (emphasis added). With respect to continuing treatment, the governing regulations further provide:

(2) Continuing treatment by a health care provider.

A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

(i) *A period of incapacity (i.e.,* inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom) of more than three consecutive calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:

(A) Treatment two or more times by a health care provider, by a nurse or physician's assistant under direct supervision of a health care provider, or by a provider of health care services (*e.g.,* physical therapist) under orders of, or on referral by, a health care provider; or

(B) Treatment by a health care provider on at least one occasion which results in a regimen of continuing treatment under the supervision of the health care provider.

29 C.F.R. § 825.114(a)(2)(i) (emphasis added). The Eighth Circuit Court of Appeals applies an objective test to determine whether an employee suffers from a "serious health condition," which requires the plaintiff to prove: "(1) [he] had a 'period of incapacity requiring absence from work,' (2) that this period of incapacity exceeded three [consecutive] ·days, and (3) that [he] received 'continuing treatment by ... a health care provider' within the period."

*Rankin v. Seagate Technologies, Inc.,* 246 F.3d 1145, 1148 (8th Cir.2001) (citing *Thorson v. Gemini Inc.,* 205 F.3d 370, 377 (8th Cir.2000) and *Martyszenko,* 120 F.3d at 122–23). Therefore, the threshold question is whether the plaintiff actually suffered from a period of incapacity. *See Martyszenko v. Safeway, Inc.,* 120 F.3d 120, 123 (8th Cir.1997) (finding that a showing of incapacity is required for a plaintiff to have a "serious health condition" under the FMLA); *Ozolins v. Northwood–Kensett Cmty Sch. Dist.,* 40 F.Supp.2d 1055, 1065 (N.D.Iowa 1999).

The FMLA defines incapacity as the "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i). The plaintiff has the burden of showing that he was incapacitated. *See Joslin v. Rockwell Intn'l Corp.,* 8 F.Supp.2d 1158, 1160 (N.D.Iowa 1998) (citing *Olsen v. Ohio Edison Co.,* 979 F.Supp. 1159, 1165 (N.D.Ohio 1997)). In this instance plaintiff Conrad relies exclusively on the note Dr. Anderson gave to plaintiff to submit to Eaton, and on Dr. Anderson's testimony to carry his burden of establishing incapacity. Dr. Anderson testified that plaintiff suffered from a major depressive episode catalyzed by his job at Eaton. Plf.'s App. at pg. 5–6. Dr. Anderson did opine that Conrad was not ready to go back to work during August and September 2001, but qualified that statement by saying Conrad was not fit to go back to *Eaton,* but was certainly capable of performing the same job functions for another employer. Plf.'s App. at pg. 3–4. It is also undisputed that Dr. Anderson gave plaintiff a note on August 1, 2001, which plaintiff then gave to Eaton, which stated: "No work until further notice!" Plf.'s App. at 7. Of course, plaintiff contends, in his briefs and filings with this court, that he was incapacitated. Other than language in his briefs and filings with

this court, the record does not contain any testimony, affidavit, or other declaration by the plaintiff that he was incapacitated for three consecutive days or more beginning August 1, 2001.

Defendant Eaton likewise relies on Dr. Anderson's testimony to establish that Conrad was *not* incapacitated within the definition of the FMLA. First, Eaton points to the fact that while Dr. Anderson testified that Conrad should not work during the period of August 1, 2001, through August 3, 2001, that Conrad was capable, and in fact was encouraged, to perform routine daily tasks:

Q: On August 1—between August 1 and August 3, other than—than working, did you have an opinion as to whether he would be limited in his other daily functioning?

A: Oh, probably would be. He probably wasn't sleeping well. He was so hysterical at the time, I didn't figure he would be able to do too much; although, *I would have encouraged him to get out and mow the grass, do something outside, do something.*

Q: So it would have been your recommendation that he do as much as possible other than—

A: Right,—

Q: —work?

A: —right.

Def.'s App. at pg. 40. Further, Eaton relies on Dr. Anderson's opinion that the plaintiff was not incapacitated from August 1, 2001 through August 8, 2001:

Q: ... During the time between August 1st, 2001, the first time you saw Mr. Conrad, and August 8, 2001, it would not have been your opinion that he was incapacitated; is that correct?

A: *No, he wasn't incapacitated.*

Q: Okay. So he was not incapacitated during that time, just so it's clear for the record?

A: Okay.

Q: Correct?

A: Right.

Def.'s App. at pg. 41–42 (emphasis added). Finally, Eaton draws on the testimony of Dr. Anderson that Conrad could have worked during September 2001 and October 2001:

Q: ... Dean could have worked during [the interval from when he was fired from Eaton on September 11, 2001 and when he started a new job on November 15, 2001]?

A: Right.

Q: —between jobs?

A: Right.

Def.'s App. at 43. Eaton states that as Dr. Anderson's testimony establishes that Conrad was able to perform daily functions, was able to work at locations other than Eaton, and specifically stated that plaintiff was not incapacitated from August 1, 2001, through August 8, 2001, that there is no genuine issue of material fact as to whether Conrad was incapacitated as required by the FMLA for establishment of a "serious health condition."

█ The regulations governing the FMLA clearly state that to be incapacitated the plaintiff must show an "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefor, or recovery therefrom." 29 C.F.R. § 825.114(a)(2)(i). Though Dr. Anderson testified that Conrad could not work at Eaton, he also stated that Conrad was mentally and physically capable of performing the functions of his job for a different employer—a fact which defendant Eaton asserts precludes Conrad from showing that he was incapacitated. Def.'s App. at pg. 41. The court disagrees with the position taken by Eaton. "Inability to work," as used in the definition of incapacity under the FMLA, must be read in light of the fundamental purpose of the FMLA. This is best demonstrated by comparing the purposes of the ADA with those of the FMLA.

█ The ADA prohibits employers from discriminating against a qualified employee who is disabled because of his disability. 42 U.S.C. § 12112(a). Under the ADA, discrimination is defined to include the failure to make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified employee with a disability, unless the accommodation would impose an undue hardship. Id. § 12112(b)(5)(A). A key purpose of the ADA is "to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities available to persons without disabilities." 29 C.F.R. Pt. 1630, App.; see Heather K. by Anita K. v. City of Mallard, Iowa, 887 F.Supp. 1249, 1261 (N.D.Iowa 1995).

An ADA plaintiff must demonstrate that he or she is unable to work in a "broad range of jobs" to show that he or she is unable to perform "the major life activity of working" and is therefore disabled for purposes of the ADA, see 29 C.F.R. § 1630.2(j)(3)(i). A plaintiff who shows only an inability to perform his or her own job has not, therefore, made a showing of disability sufficient to entitle him or her to the protections of the ADA. See Taylor v. Nimock's Oil Co., 214 F.3d 957, 960 (8th Cir.2000).

Stekloff v. St. John's Mercy Health Sys., 218 F.3d 858, 861 (8th Cir.2000). The protection of the ADA is "almost perpetual, lasting as long as the employee continues to meet the statutory criteria." Spangler v. Fed. Home Loan Bank of Des Moines, 278 F.3d 847, 851 (8th Cir.2002). However, the reach of the ADA is limited, in that it does not protect a disabled employee that is unable, with or without reasonable accommodation, to perform the es-

sential functions of the position that they hold. *See id.*

In contrast to the ADA, one of the fundamental purposes of the FMLA was to create job security for employees "who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). Unlike the ADA, the FMLA "was designed to protect the employee who is 'unable to perform the functions of the position of the employee' from losing [their] position during the leave period." *Spangler v. Fed. Home Loan Bank of Des Moines,* 278 F.3d 847, 851 (8th Cir.2002) (quoting 29 C.F.R. § 825.115). "Essentially the leave time under the FMLA structure is an opportunity for the employee to treat or attend to the condition rendering [him] *unable to perform [his] job." Id.* (emphasis added). Also unlike the ADA, the FMLA does not offer the employee with perpetual protection from termination—the FMLA merely grants an employee suffering from a serious health condition 12 weeks of leave to deal with the situation. 29 U.S.C. § 2612. After the 12 week period has expired, should the employee be unable to perform the functions of his position, "the employee has no right to restoration to another position under the FMLA." *Reynolds v. Phillips & Temro Indus., Inc.,* 195 F.3d 411, 414 (8th Cir.1999) (quoting 29 C.F.R. § 825.214(b)). Because " 'the declared purposes of the FMLA and its legislative history' are concerned with maintaining job security, an FMLA inquiry examining the employee's ability to perform the essential functions of his job focuses 'on [his] ability to perform those functions *in [his] current environment.*' " *Duty v. Norton-Alcoa Proppants,* 293 F.3d 481, 495 (8th Cir.2002) (quoting *Stekloff,* 218 F.3d at 861) (emphasis added). "A demonstration that an employee is unable to work in his or her current job due to a serious health condition is enough to show that the employee is incapacitated, *even if that job is

the only one that the employee is unable to perform." Stekloff,* 218 F.3d at 861. Therefore, for purposes of the FMLA, an inquiry into whether the employee was unable to work is limited to whether the employee was unable to work at the position they currently held.

Therefore, considering the purpose and intent of the FMLA, the fact that Conrad could perform his job functions at some hypothetical job that does not exist is irrelevant—rather, the inquiry is focused on whether Conrad was able to *perform his job functions at Eaton.* Regardless of Dr. Anderson's comments that Conrad was not incapacitated nor disabled during the relevant time period, Dr. Anderson never faltered in his opinion that Conrad was *incapable* of working at Eaton due to the ramifications of Conrad's major depressive episode. Dr. Anderson's opinion as to Conrad's inability to work *at Eaton* stands unchallenged—Eaton has produced no evidence challenging this opinion. *See Thorson,* 205 F.3d at 381 (holding that where defendant company did not avail itself of the procedural protection of obtaining a medical certification there was no genuine issue of material fact as to whether the plaintiff was incapacitated). Clearly, in this situation in which the unquestioned testimony of plaintiff's expert witness and treating psychiatrist is that Conrad was incapable of performing his job functions in his current work environment, summary judgment is not warranted.

### III. CONCLUSION

Therefore, for the reasons stated above, the defendant's motion for summary judgment as to count III of the plaintiff's complaint is **denied**.

**IT IS SO ORDERED.**